J-E03005-18

2019 PA Super 118

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JASON ALLEN LIPPINCOTT | : | |
| | : | |
| Appellant | : | No. 2057 EDA 2014 |

Appeal from the Order June 17, 2014
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0003839-2012,
CP-48-CR-0003840-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
LAZARUS, J., OTT, J., STABILE, J., DUBOW, J., and MURRAY, J.

OPINION BY MURRAY, J.:                                   **FILED APRIL 15, 2019**

Jason Allen Lippincott (Appellant) appeals from the order designating him as a sexually violent predator (SVP) pursuant to the Pennsylvania Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10-9799.41.  After careful consideration, we vacate the order and remand to the trial court for further proceedings consistent with this decision.

On January 24, 2013, at Docket Number CP-48-CR-0003839-2012 (3839-2012), Appellant pled guilty to one count each of aggravated indecent assault and corruption of minors.[1]  These charges arose from Appellant's sexual assault of a 14-year-old female in May 2012.  The same day, at Docket

---

[1]  18 Pa.C.S.A. §§ 3125(a)(8), 6301(a)(1)(i).

Number CP-48-CR-0003840-2012 (3840-2012), Appellant pled guilty to one count each of statutory sexual assault, corruption of minors, and indecent assault.[2] These charges resulted from Appellant's sexual assault of a different 14-year-old female, which occurred on five occasions between October 2011 and April 2012.

On August 21, 2013, the trial court sentenced Appellant at both dockets to an aggregate term of 30 to 60 months of incarceration, followed by 72 months of probation. The same day, the trial court heard testimony from Dr. Veronique Valliere (Dr. Valliere) of the Sexual Offenders Assessment Board. Dr. Valliere opined that Appellant met the definition of an SVP. On November 25, 2013, Appellant filed a motion in which he asked the court to appoint an expert witness to conduct an independent SVP evaluation. On December 27, 2013, the trial court held a hearing on Appellant's motion. At the conclusion of the hearing, the court denied the motion. On June 17, 2014, the trial court entered an order classifying Appellant as an SVP.

On July 10, 2014, Appellant filed a timely notice of appeal. On January 17, 2017, the trial court entered an order directing Appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the

---

[2] 18 Pa.C.S.A. §§ 3122.1(b), 6301(a)(1)(i), 3126(a)(1).

Pennsylvania Rules of Appellate Procedure.[3]  On February 8, 2017, Appellant filed his Rule 1925(b) statement.

On appeal to this Court, the parties initially filed briefs on the sole issue raised in Appellant's Rule 1925(b) statement, *i.e.*, whether the trial court erred in denying Appellant's request for a court-appointed expert to conduct an independent SVP evaluation.  However, on July 19, 2017, our Supreme Court decided **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017).  In **Muniz**, our Supreme Court held that retroactive application of the registration and reporting requirements of SORNA violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions.  **Id.** at 1223.  Consequently, on September 13, 2017, Appellant filed an application seeking permission to file a supplemental brief with this Court to address **Muniz**.  We granted the application on October 23, 2017.

On April 20, 2018, this Court certified this case for *en banc* review[4] and directed the parties to brief the following issues:

> (1) In consideration of Appellant's having committed the relevant crimes between October 2011 and May 2012, whether the enactment date or the effective date of the Sex Offender

---

[3] We recognize the substantial gap between Appellant's notice of appeal and the trial court's Rule 1925 order.  Based on our review of the record, it appears the delay is the result of the trial court's improper consideration of numerous premature petitions Appellant filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, during the pendency of this appeal.

[4] This Court also certified **Commonwealth v. Wood**, 1193 & 1194 MDA 2017, which involves the same issues, for *en banc* review.

Registration and Notification Act ("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.41, controls for purposes of offenses committed between the enactment date and the effective date?

(2) Whether there is an *ex post facto* violation to a defendant who is sentenced under SORNA for criminal acts committed after the enactment date of SORNA (December 20, 2011) but before the effective date of SORNA (December 20, 2012)?

(3) Whether this Court must address if the Act of Feb. 21, 2018, P.L. 27, No. 10 (HB 631 of 2017; "Act 10"), applies in the instant case and all cases governed by SORNA and, if so, whether Act 10 renders the registration provisions of SORNA non-punitive?

(4) If Act 10 applies in the instant matter, whether Act 10's potential effects on Appellant, as a result of the crimes having been committed between October 2011 to May 2012, violate the *ex post facto* clause of the United States or Pennsylvania Constitutions?

Order Directing *En Banc* Certification, 4/20/18.  In addition to these issues, Appellant also argues that with respect to his SVP evaluation, "[t]he [t]rial [c]ourt erred and abused its discretion by failing to appoint a psychological expert upon Appellant's request where Appellant was indigent and without funds to retain his own expert."[5]  Appellant's Brief at 4.

We begin by addressing the first two issues.  Appellant argues that he should not be subject to SORNA's registration and reporting requirements. Appellant asserts that although the General Assembly enacted SORNA on December 20, 2011, prior to the time he committed several of his crimes in April and May 2012, SORNA did not go into effect until December 20, 2012.

---

[5]  In the order, we also informed Appellant that he may raise any appealable or preserved issue(s) of his choosing for *en banc* consideration.

- 4 -

Therefore, Appellant contends that the application of SORNA to his sentence violates the *ex post facto* clause of the United States and Pennsylvania Constitutions under **Muniz**.[6] Because this issue presents a question of law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Lee**, 935 A.2d 865, 876 (Pa. 2007).

"The Pennsylvania General Assembly passed SORNA as Act 111 of 2011, signed December 20, 2011. In so doing, it provided for the expiration of prior registration requirements, commonly referred to as Megan's Law, 42 Pa.C.S.A. §§ 9791–9799.9, as of December 20, 2012, and for the effectiveness of SORNA on the same date." **In re J.B.**, 107 A.3d 1, 3 (Pa. 2014).

For purposes of registration, SORNA classifies sex offenders into three tiers:

> Those convicted of Tier I offenses are subject to registration for a period of fifteen years and are required to verify their registration information and be photographed, in person at an approved registration site, annually. 42 Pa.C.S.[A.] § 9799.15(a)(1), (e)(1). Those convicted of Tier II offenses are subject to registration for a period of twenty-five years and are required to verify their registration information and be photographed, in person at an approved registration site, semi-annually. 42 Pa.C.S.[A.] § 9799.15(a)(2), (e)(2).

---

[6] **See Commonwealth v. Batts**, 163 A.3d 410, 434 (Pa. 2017) (citation omitted) ("A challenge to the legality of a particular sentence may be reviewed by any court on direct appeal; it need not be preserved in the lower courts to be reviewable and may even be raised by an appellate court *sua sponte*."); **see also Commonwealth v. Infante**, 63 A.3d 358, 363 (Pa. Super. 2013) (quotations and internal citations omitted) ("As long as the reviewing court has jurisdiction, a challenge to the legality of the sentence is non-waivable and the court can even raise and address it *sua sponte*.").

Those convicted of Tier III offenses are subject to lifetime registration and are required to verify their registration information and be photographed, in person at an approved registration site, quarterly. 42 Pa.C.S.[A.] § 9799.15(a)(3), (e)(3).

*Muniz*, 164 A.3d at 1206-07 (footnotes omitted).

The offenses that constitute Tier I, II, and III offenses are set forth in 42 Pa.C.S.A. § 9799.14(b)-(d). Here, there is no dispute that Appellant would be a Tier III sex offender under SORNA due to his conviction of statutory sexual assault and aggravated indecent assault. *See* 42 Pa.C.S.A. § 9799.14(d)(3), (8). As a Tier III offender, Appellant would be subject to lifetime registration and quarterly reporting requirements. *See* 42 Pa.C.S.A. § 9799.15(a)(3), (e)(3). Because he committed all of his offenses prior to when SORNA became effective, Appellant argues that under *Muniz*, the application of SORNA to his sentence violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions.

In *Muniz*, our Supreme Court in a plurality decision explained that the *ex post facto* clauses of both the United States and Pennsylvania Constitutions ensure "that individuals are entitled to fair warning about what constitutes criminal conduct, and what the punishments for that conduct entail." *Muniz*, 164 A.3d at 1195 (citations omitted). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond

- 6 -

what was prescribed when the crime was consummated." *Id.* (quoting *Weaver v. Graham*, 450 U.S. 24 (1981)).

*Muniz* identified the four types of laws that deny the protections that the *ex post facto* prohibitions seek to afford: (1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action; (2) Every law that aggravates a crime, or makes it greater than it was, when committed; (3) **Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed**; and (4) Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender. *Muniz*, 164 A.3d at 1195 (citing *Calder v. Bull*, 3 U.S. 386, 390 (1798) (emphasis added). The Court explained that laws that fall within any of the above four *Calder* designations and which disadvantage a defendant are *ex post facto* laws and constitutionally infirm. *Id.* at 1196.

The Supreme Court in *Muniz* then addressed the constitutionality of SORNA. The Court concluded that SORNA violated *ex post facto* prohibitions under both the United States and Pennsylvania Constitutions. *Id.* at 1223. The *Muniz* Court reasoned that despite the legislature's designation of SORNA as a civil remedy, it was punitive in nature, and consequently, SORNA, as a criminal penalty, fell within the third *Calder* category (*i.e.*, application of the statute would inflict greater punishment than the law in effect at the time the

defendant committed his crimes). *Id.* at 1196, 1218. Accordingly, the Supreme Court vacated the portion of the judgment of sentence that required the appellant to comply with SORNA. While *Muniz* is not a majority decision, the concurring opinion joins the Supreme Court's lead opinion to the extent it concludes that SORNA is punitive and that it was unconstitutional as applied to the appellant, in violation of both state and federal *ex post facto* prohibitions.[7]

_____

[7] Justice Wecht's concurrence, joined by Justice Todd, agrees with the lead opinion that retroactive application of SORNA violates the *ex post facto* provision of the Pennsylvania Constitution. However, the concurrence takes issue with the lead opinion's position that Pennsylvania's *ex post facto* clause grants greater protection than the federal *ex post facto* clause. The concurring opinion asserts instead that "the United States Supreme Court's interpretation of the federal *ex post facto* clause is entirely consistent with our understanding of Pennsylvania's clause," and that the Pennsylvania Supreme Court "has gone to great lengths to align our own *ex post facto* jurisprudence with decisions from the United States Supreme Court." *Muniz*, 164 A.3d at 1225, 1228. The concurrence finds no justification for a departure from federal *ex post facto* precedent when interpreting the Pennsylvania *ex post facto* clause. Nevertheless, the concurrence concludes that even "applying federal *ex post facto* standards . . . SORNA is punitive and cannot be applied retroactively." *Id.* at 1232-33. Thus, the concurrence agrees with the holding of the lead opinion that SORNA violates federal and state *ex post facto* prohibitions. *See MacPherson v. Magee Memorial Hosp. for Convalescence*, 128 A.3d 1209, 1229 (Pa. Super. 2015), (quoting *Commonwealth v. Brown*, 23 A.3d 544, 556 (Pa. Super. 2011) ("[i]n cases where a concurring opinion enumerates the portions of the plurality's opinion in which the author joins or []agrees, those portions of agreement gain precedential value . . . . [H]owever, [if] the concurrence does not explicitly state its agreement or disagreement with the plurality, we must look to the substance of the concurrence to determine the extent to which it provides precedential value to points of agreement.").

Like **Muniz**, this case implicates the *ex post facto* clauses of the United States and Pennsylvania Constitutions because application of SORNA's registration and reporting requirements would impose greater punishment on Appellant than the law in effect at the time he committed his crimes. **See id.** at 1195-96. Although SORNA increased the registration period for some crimes, the registration requirement for individuals convicted of aggravated indecent assault remained lifetime registration. **Compare** 42 Pa.C.S.A. § 9795.1(b)(2) (expired) **with** 42 Pa.C.S.A § 9799.14(d). While SORNA did not enhance the registration period for aggravated indecent assault, it did augment the registration and reporting requirements for Tier III offenders, which included the addition of quarterly in-person reporting and the posting of personal information on the Pennsylvania State Police website. **Muniz**, 164 A.3d at 1210-11. As our Supreme Court pointed out in **Muniz**, these additional registration and reporting requirements constitute a greater punishment than what Megan's Law would have imposed, and consequently, their retroactive application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **Id.** at 1193-1196, 1216.

Appellant argues that the application of SORNA to his sentence was illegal under **Muniz**. He contends that at the time he committed his offenses in 2011 and 2012, he would have been subject to then-effective Megan's Law, under which lifetime registration and reporting requirements were less stringent. Appellant asserts that the application of SORNA retroactively

inflicted upon him a punishment greater than what he would have received under the law in effect at the time he committed the crimes. Further, although his guilty plea and sentencing occurred after SORNA's effective date, Appellant contends that for purposes of an *ex post facto* analysis, the date upon which the crime was committed is dispositive, and not the date of his plea, conviction, or sentencing.

The Commonwealth counters that although SORNA became effective on December 20, 2012 (after Appellant committed his offenses), SORNA was enacted one year earlier on December 20, 2011 (before Appellant committed several of his offenses). Thus, the Commonwealth asserts that Appellant had sufficient notice of SORNA's impending registration requirements at the time he committed his offenses at Docket Number 3839-2012 and at least some of his offenses at Docket Number 3840-2012, and consequently, there was no *ex post facto* violation.

As Appellant argues, this Court has held that the critical inquiry for determining whether the application of SORNA to a convicted sex offender violates *ex post facto* prohibitions is the date of the offense. ***Commonwealth v. Horning***, 193 A.3d 411, 417 (Pa. Super. 2018). Additionally, the parties do not dispute that the application of SORNA to a sex offender for offenses committed prior to SORNA's enactment constitutes an *ex post facto* violation in light of ***Muniz***. Instead, the parties dispute whether it is also an *ex post*

*facto* violation to apply SORNA to an individual who committed sex offenses prior to its effective date.

In support of his argument, Appellant relies in part on the United States Supreme Court's decision in **Weaver v. Graham**, 450 U.S. 24 (1981), in which the Court expounded on *ex post facto* prohibitions. In that case, the Supreme Court stated that "[t]he *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." **Id.** at 28 (quotations and citations omitted). With the *ex post facto* prohibition, "the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." **Id.** at 28-29. Importantly, "the *ex post facto* prohibition . . . forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." **Id.** at 30. "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." **Id.**

Consonant with **Weaver**, we hold that, for purposes of our *ex post facto* analysis, it is SORNA's effective date, not its enactment date, which triggers its application. Although the Supreme Court in **Weaver** at times used the concepts of "effective date" and "enactment date" interchangeably, a holistic

- 11 -

review of the decision reveals that the Court intended for the effective date of a statute to be the relevant date for *ex post facto* determinations.  ***See id.*** at 31 (stating that "[t]he critical question is whether the law changes the legal consequences of acts completed **before its effective date**").  The Supreme Court made clear in ***Weaver*** that the Framers designed the *ex post facto* clause to preclude legislatures from passing laws that increased the punishment beyond what was in effect at the time the crime was committed.  ***See id.***  To conclude otherwise would render a statute's effective date meaningless.  As our Supreme Court has explained, "[i]t is presumed that every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect[.]" ***Commonwealth v. Lobiondo***, 462 A.2d 662, 664 (Pa. 1983).  We decline to interpret SORNA in a manner that does not give effect to the statute's effective date.

Moreover, reliance on the enactment date as the triggering date would result in disparate treatment for convicted sex offenders.  If we relied on the enactment date as the trigger for application of SORNA, it could potentially result in different registration and reporting requirements for sex offenders who committed the exact same crime on the exact same day.  If an offender committed a sex offense in early 2012 and was convicted and sentenced prior to December 20, 2012, SORNA could not apply because it was not yet effective.  If another offender committed the same crime on the same day, but was not convicted and sentenced until after December 20, 2012, under

the Commonwealth's position, that offender would be subject to SORNA's registration and reporting provisions. This improperly gives effect only to the dates of conviction and sentencing, when we have explicitly held that the date of the offense is the relevant inquiry when determining whether an *ex post facto* violation has occurred. **See Horning**, 193 A.3d at 417.

To apply SORNA to offenders whose crimes were committed before its effective date would increase punishment for sex offenses from the punishment that existed at the time of the offense. Therefore, we hold that application of SORNA to sex offenders for offenses committed before its effective date violates the *ex post facto* clauses of the United States and Pennsylvania Constitution.

This conclusion comports with other persuasive authority on the issue. **See U.S. v. Tykarsky**, 446 F.3d 458, 480 (3d Cir. 2006) ("if a defendant completes a crime before an increased penalty takes effect, it would violate his right not to be subject to *ex post facto* legislation to impose the increased penalty upon him"); **Coady v. Vaughn**, 770 A.2d 287, 289 (Pa. 2001) *opinion after certified question answered*, 251 F.3d 480 (3d Cir. 2001) ("A state law violates the *ex post facto* clause if it was adopted after the complaining party committed the criminal acts and inflicts a greater punishment than the law annexed to the crime, when committed"); **Commonwealth v. Quintanilla-Pineda**, 736 MDA 2017 (January 23, 2018) (unpublished memorandum) (vacating portion of sentence requiring the defendant to comply with SORNA

for offenses committed when Megan's Law III was still applicable, even though defendant's guilty plea and sentence occurred after SORNA's effective date); 1 Pa.C.S.A. § 1701 (Statutory Construction Act) ("except as otherwise provided in this chapter all statutes enacted finally at any regular session of the General Assembly **not containing a specified effective date** shall be effective on the date specified by that one of the following rules of construction in effect on the date of final enactment of the statute") (emphasis added); 1 Pa.C.S.A § 1926 (Statutory Construction Act) ("no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly"); *Commonwealth v. Johnson*, 553 A.2d 897, 899 (Pa. 1989) ("The principle embodied in the Statutory Construction Act, that the legislature must clearly manifest an intent to apply an act retroactively, is also recognized in case law"); *Witmer v. Exxon Corp*., 394 A.2d 1276, 1284 (Pa. 1978) *aff'd* 434 A.2d 1222 (1981) (a court cannot accelerate the date chosen by the legislature for a statute to become effective).

Instantly, Appellant committed his crimes no later than May 2012. The General Assembly explicitly stated that SORNA became effective on December 20, 2012. *See Commonwealth v. Martinez*, 147 A.3d 517, 522 (Pa. 2016) (reiterating that "SORNA provided for the expiration of Megan's Law as of December 20, 2012, and for the effectiveness of SORNA on the same date."). Thus, Appellant committed his crimes at least seven months prior to SORNA's effective date. Given the foregoing, and in reliance on our Supreme Court's

decision in **Muniz**, we agree with Appellant that application of SORNA's registration and reporting requirements in this case violated *ex post facto* prohibitions, as it inflicted a greater punishment upon Appellant than the law in effect at the time he committed his crimes.

In support of its argument, the Commonwealth relies on **Commonwealth v. Kizak**, 148 A.3d 854 (Pa. Super. 2016). Kizak was arrested for DUI on two separate occasions in three months – on September 24, 2014 and on December 10, 2014. **Id.** at 855. During that period, the General Assembly amended Section 3806 of the Motor Vehicle Code, "which addresses the calculation of prior DUI offenses to determine whether a defendant is a repeat offender for sentencing purposes." **Id.** at 858-59. The amendment to Section 3806 was enacted on October 27, 2014 and took effect on December 26, 2014.[8] **Id.** at 859. "[U]nder the 2014 amendment, the ten-year 'look back' period for determining prior offenses became the date of sentencing and was no longer the date that the offense occurred." **Id.** "Also, Section 2 of Act 2014-189 provides that the amendment of [S]ection 3806(b) **shall apply to persons sentenced** on or after [December 26, 2014,] the effective date of this section." **Id.** (citation omitted, emphasis in original). Kizak argued the trial court's treatment of her December 10, 2014 DUI as a second DUI offense violated *ex post facto* prohibitions when the amendment

---

[8] Section 3806 has since been amended again. **See** 75 Pa.C.S.A. § 3806 (S.B. 290, 200 Gen. Assemb., Reg. Sess. (Pa. 2016), Act 33 of 2016).

of Section 3806 did not become effective until December 26, 2014, which was
after her December 10, 2014 DUI. *Id.* at 856.

In rejecting Kizak's *ex post facto* claim, this Court explained:

The amendment to the law in question was signed by the
Governor of Pennsylvania on October 27, 2014. Over six weeks
later, on December 10, 2014, Appellant committed the instant DUI
offense. The amendment to [S]ection 3806(b) took effect on
December 26, 2014. Furthermore, the legislature specified in the
statute that the amendment of section 3806(b) "shall apply to
persons **sentenced on or after** [December 26, 2014,] the
effective date of this section." Act 2014-189 § 2 (emphasis
added).

Appellant was charged with the instant DUI offense on January
23, 2015. On May 20, 2015, Appellant entered her guilty plea.
Thereafter, on July 14, 2015, the trial court, applying the
amendment to section 3806(b), imposed Appellant's judgment of
sentence.

Here, the new law was not applied to events occurring before
its enactment, that being October 27, 2014, because the instant
offense was committed on December 10, 2014. Moreover,
Appellant had fair notice of the change in the statute as her
offense occurred more than six weeks after the amendment to the
statute was signed into law. Accordingly, we are satisfied that
there was no *ex post facto* violation in the instant matter.

*Id.* at 860; *see also Commonwealth v. McGarry*, 172 A.3d 60 (Pa. Super.
2017) (applying the *Kizak* holding to an identical *ex post facto* claim involving
the 2014 amendment to Section 3806).

We find *Kizak* distinguishable. In *Kizak*, the DUI statute at issue,
Section 3806, expressly stated that it applied to persons **sentenced after its
effective date**. *Kizak*, 148 A.3d at 859. This Court therefore elected in
*Kizak* to honor the expressly stated intent of the General Assembly and apply

the statute to sentences imposed after its enactment date, even for DUIs committed before the effective date. SORNA, however, does not include language such as that contained in Section 3806 (*i.e.*, that SORNA is to apply to any sex offender convicted after its effective date, regardless of the date the offense was committed). Thus, ***Kizak*** is not applicable to matters arising under SORNA. Further, to the extent ***Kizak*** would hold that the relevant date in conducting an *ex post facto* analysis is always the enactment date of the statute, as opposed to the effective date, we overrule such a holding.

We acknowledge that in our order directing *en banc* certification of this case, we asked the parties to brief whether Act of Feb. 21, 2018, P.L. 27, No. 10 (HB 631 of 2017; Act 10) renders the registration provisions of SORNA non-punitive, and if so, whether application of Act 10 to Appellant would violate the *ex post facto* clauses of the United States and Pennsylvania Constitutions. However, we decline in this instance to address the constitutional implications of Act 10.

This Court recently explained:

> In response to our Supreme Court's decision in ***Muniz*** and this Court's later decision in ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa. Super. 2017), ***appeal granted***, 190 A.3d 581 [] (Pa. July 31, 2018) (holding certain sexually violent predator provisions of SORNA were constitutionally infirm), the Pennsylvania General Assembly passed Acts 10 and 29 of 2018. The express purpose of these legislative enactments was, *inter alia*, to "[p]rotect the safety and general welfare of the people of this Commonwealth by providing for registration, community notification and access to information regarding sexually violent predators and offenders who are about to be released from custody and will live in or near their neighborhood[,]" and to cure

> SORNA's constitutional defects by "address[ing] [*Muniz* and *Butler*]." *See* 42 Pa.C.S.A. § 9799.51(b)(1),(4).
>
> Specifically, our General Assembly modified Subchapter H's registration requirements for those offenders convicted of committing offenses that occurred on or after SORNA's effective date of December 20, 2012. The General Assembly also added Subchapter I to Title 42, Part VII, Chapter 97. Subchapter I sets forth the registration requirements that apply to all offenders convicted of committing offenses on or after Megan's Law I's effective date (April 22, 1996), but prior to SORNA's effective date.

*Commonwealth v. Bricker*, --- A.3d ---, 2018 WL 5093265 at *4 (Pa. Super. 2018).

When the trial court sentenced Appellant in August 2013 at Docket Numbers 3839-2012 and 3840-2012, it did so pursuant to Subchapter H of SORNA as it existed at that time. Although the General Assembly recently amended Subchapter H, Appellant has not received a sentence under the amended provision. Consequently, the question of whether Act 10 and Act 29 are constitutional is not before us. We also recognize that our Supreme Court recently granted review to determine the issue of whether Acts 10 and 29 are constitutional. *See Commonwealth v. Lacombe*, 35 MAP 2018 (Pa. 2018). Accordingly, we decline to address those issues in this appeal.

Because retroactive application of SORNA's registration and reporting requirements to Appellant violated the *ex post facto* clauses of the United States and Pennsylvania Constitutions, we conclude that Appellant is not required to register as a sex offender under SORNA. Accordingly, we remand

this matter to the trial court to determine the appropriate registration and reporting requirements for Appellant.

Finally, we address Appellant's claim relating to his SVP designation. Initially, Appellant challenged his SVP designation by asserting that the trial court erred in declining to appoint an expert to assist him and conduct an independent SVP evaluation on his behalf. Appellant now also asserts that we must vacate his SVP designation in light of this Court's decision in *Commonwealth v. Butler*, 173 A.3d 1212 (Pa. Super. 2017), *appeal granted*, 190 A.3d 581 (Pa. 2018).

This Court in *Butler* explained:

> To understand the issue presented in this case, it is necessary to review the relevant portions of SORNA that address SVPs. Under SORNA, an individual convicted of a sexually violent offense . . . must be evaluated by the SOAB. 42 Pa.C.S.A. § 9799.24(a). The SOAB conducts a 15-factor analysis to determine if the individual should be designated an SVP. 42 Pa.C.S.A. § 9799.24(b). The SOAB then submits a report to the prosecuting authority. 42 Pa.C.S.A. § 9799.24(d). Upon praecipe by the prosecuting authority, the trial court schedules an SVP hearing. 42 Pa.C.S.A. § 9799.24(e)(1). At the conclusion of that hearing, "the court [determines] whether the Commonwealth has proved by clear and convincing evidence that the individual is a[n SVP]." 42 Pa.C.S.A. § 9799.24(e)(3). It is this last step in the process, section 9799.24(e)(3), that is at issue in this case.
>
> As relevant to the issue presented in this case, an SVP faces mandatory lifetime registration under SORNA. 42 Pa.C.S.A § 9799.15(a)(6).

*Butler*, 173 A.3d at 1215.

In addressing the constitutionality of Pennsylvania's procedural mechanism for SVP designations, we first acknowledged that "[i]n [*Apprendi*

*v. New Jersey*, 530 U.S. 466 (2013)], the Supreme Court of the United

States held that other than the fact of a prior conviction, any fact that

increases the penalty for a crime beyond the prescribed statutory maximum

must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at

1216 (quoting *Commonwealth v. Conaway*, 105 A.3d 755, 761 (Pa. Super.

2014)). We further recognized that in *Alleyne v. United States*, 570 U.S.

99 (2013), "the [Supreme Court of the United States] held that any fact that

increases the mandatory minimum sentence for a crime is an element that

must be submitted to the jury and found beyond a reasonable doubt." *Id.* at

1217 (quoting *Conaway*, *supra*).

Mindful of *Apprendi*, *Alleyne*, and *Muniz*, this Court held that

Pennsylvania's statutory procedure for designating individuals SVPs was

unconstitutional. *Id.* at 1217-18. We reasoned:

> [O]ur Supreme Court's holding that registration requirements
> under SORNA constitute a form of criminal punishment is
> dispositive of the issue presented in this case. In other words,
> since our Supreme Court has held that SORNA registration
> requirements are punitive or a criminal penalty to which
> individuals are exposed, then under *Apprendi* and *Alleyne*, a
> factual finding, such as whether a defendant has a "mental
> abnormality or personality disorder that makes [him or her] likely
> to engage in predatory sexually violent offenses[,]" 42 Pa.C.S.A.
> § 9799.12, that increases the length of registration must be found
> beyond a reasonable doubt by the chosen fact-finder. Section
> 9799.24(e)(3) identifies the trial court as the finder of fact in all
> instances and specifies clear and convincing evidence as the
> burden of proof required to designate a convicted defendant as an
> SVP. Such a statutory scheme in the criminal context cannot
> withstand constitutional scrutiny. Accordingly, we are constrained
> to hold that section 9799.24(e)(3) is unconstitutional and

- 20 -

Appellant's judgment of sentence, to the extent it required him to register as an SVP for life, was illegal.

*Id.* at 1217-18.

Our review of the certified record reveals that the trial court, which did not have the benefit of our ***Butler*** decision, designated Appellant as an SVP without making the required factual findings beyond a reasonable doubt. Accordingly, we vacate the trial court's designation of Appellant as an SVP. In light of this decision, we do not address Appellant's initial argument that the trial court erred in denying his request for the appointment of an expert to assist him at his SVP hearing.

Order vacated. Case remanded. Jurisdiction relinquished.

President Judge Gantman, President Judge Emeritus Bender and Judges Bowes, Panella, Lazarus, Ott, and Dubow join the Opinion.

Judge Stabile files a concurring opinion in which President Judge Emeritus Bender and Judge Bowes join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/19