J-A27031-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL L. STRUNK :
:
Appellant : No. 160 MDA 2022

Appeal from the Judgment of Sentence Entered December 1, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000106-2020

BEFORE: DUBOW, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.: **FILED: JANUARY 6, 2023**

Appellant, Michael L. Strunk, appeals from the aggregate judgment of sentence of 17 years to 35 years' incarceration imposed by the Court of Common Pleas of Dauphin County following his conviction by a jury of two counts of sexual assault, one count of aggravated indecent assault, three counts of indecent assault, one count of unlawful contact with a minor, and one count of corruption of minors.[1] For the reasons set forth below, we affirm.

Appellant was charged with the above offenses for committing three separate assaults on a girl who was 16 and 17 years old at the time (Victim). Appellant, who was Victim's mother's paramour, was living with Victim and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3124.1, 3125(1), 3126(a)(1), 6318(a), and 6301(a)(1)(ii), respectively.

Victim's mother at the time. The charges were tried to a jury from July 22 to 23, 2021.

At trial, Victim testified that in February 2019, approximately a week before her 17th birthday, Appellant fondled her breast under her shirt, pulled down her pants and underwear, and had sexual intercourse with her when she had fallen asleep on the living room couch after she got home from work. N.T. Trial, 7/22/21, at 55-64. Victim woke up when Appellant was fondling her breast, but said nothing to Appellant during this attack and pretended to be asleep. *Id.* at 61. Victim testified that slightly more than a month later, on April 3, 2019, when she was medicated after having her wisdom teeth and other teeth removed, Appellant fondled her breast, pulled down her pants, and repeatedly put his fingers in her vagina. *Id.* at 65-71, 109. Victim testified that she was crying and tried to scream and fight him off but that she couldn't because of the effects of the pain medication that she was on and because her mouth was full of gauze. *Id.* at 69-71. Victim testified that a few days after this second assault, Appellant came into her bedroom after she had gone to bed, took her pajama pants off, and inserted his penis in her vagina. *Id.* at 71-76, 112. Victim testified that she pretended to be asleep and that the assault stopped when her mother walked into the bedroom and got angry at Appellant and Appellant left the room with her mother. *Id.* at 76-78, 117-19. Victim testified that she did not want the assaults reported to the police because she was afraid that she and her mother would become

homeless and she did not want to have to testify. *Id.* at 78-79. Victim testified that the assaults were not reported to the police and instead, she and her mother installed a lock on Victim's bedroom door, and that after the lock was installed, Victim woke up on several occasions to the sound of Appellant trying to pick the lock. *Id.* at 79-80. Victim testified that she had herself committed for psychiatric treatment shortly after the third assault because she was suicidal. *Id.* at 80, 91-92. Several months later, Victim spoke about being assaulted to an adult who had taken care of her in the past when Victim's mother was in drug treatment and that adult reported that Victim had been sexually assaulted. *Id.* at 27-29, 96-97.

Victim's mother testified that she walked into Victim's bedroom and found Appellant naked from the waist down in bed with Victim, who was also naked from the waist down. N.T. Trial, 7/22/21, at 146-48. Victim's mother testified that Victim appeared to be asleep. *Id.* at 148. Victim's mother testified that she had smoked PCP that night and was ashamed and afraid and that she did not make Appellant leave the house or call the police. *Id.* at 145, 148-51, 169-73. A Children and Youth Services worker testified that she spoke to Appellant in October 2019 after the sexual abuse report was received and that Appellant denied that he had any sexual contact with Victim. *Id.* at 182-85. A police detective who interviewed Appellant twice testified that in an October 2019 interview, Appellant denied that he had any sexual contact with Victim. N.T. Trial, 7/23/21, at 209-10. The detective testified that after

Appellant was arrested in November 2019, he asked to speak to her again and after being given **Miranda**[2] warnings, Appellant gave a videotaped statement. **Id.** at 211-13. In that videotaped statement, which was played to the jury, Appellant admitted sexual contact with Victim, but claimed that he mistook Victim for Victim's mother in the first assault and that the second and third incidents were consensual. **Id.** at 212-14, 218, 227, 242-43. Appellant did not testify or call any witnesses in his defense. **Id.** at 235-39.

On July 23, 2021, the jury convicted Appellant of all of the above charges. N.T. Trial, 7/23/21, at 296-98. Following the verdict, the trial court directed that the probation department prepare a pre-sentence investigation report and ordered that Appellant be assessed by the Sexual Offenders Assessment Board (SOAB) to determine if he should be classified as a Sexually Violent Predator (SVP) under the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S. § 9799.10, *et seq*. N.T. Trial, 7/23/21, at 300; Trial Court Order, 7/26/21.

On December 1, 2021, the trial court held a hearing on whether Appellant should be classified as an SVP and to sentence Appellant. At this hearing, the trial court heard testimony from the SOAB evaluator who assessed Appellant. N.T. SVP & Sentencing Hearing at 5-21. No other witnesses testified on the issue of whether Appellant should be classified as

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

an SVP. *Id.* at 21. Following the SOAB evaluator's testimony, the trial court found that Appellant was an SVP. *Id.* at 21-22. The trial court then imposed consecutive sentences of 5 to 10 years' incarceration for each of the sexual assault and aggravated indecent assault convictions, a concurrent sentence of 5 to 10 years' incarceration for the unlawful contact with a minor conviction, and a consecutive sentence 2 to 5 years' incarceration for corruption of minors, resulting on an aggregate sentence of 17 years to 35 years' incarceration. *Id.* at 36-41; Sentencing Order.[3]

Appellant filed a timely post-sentence motion in which he sought a new trial on the ground that the verdict was against the weight of the evidence and moved for modification of his sentence on the ground that the imposition of consecutive sentences was excessive and unreasonable. Post-Sentence Motion at 2-3. By order entered December 30, 2021, the trial court denied Appellant's post-sentence motion in its entirety. Trial Court Order, 12/30/21. This timely appeal followed.

Appellant presents the following four issues for our review:

I. Whether the evidence was insufficient to convict Mr. Strunk of unlawful contact with a minor, where the complainant testified that the sole verbal contact was in the first incident after any criminal offense was completed?

___

[3] The trial court imposed no sentence for the three indecent assault convictions on the grounds that those charges merged with the sexual assault and aggravated indecent assault convictions. N.T. SVP & Sentencing Hearing at 37-39; Sentencing Order at 1-2.

II. Whether the evidence at trial shocks the consci[ence] where the evidence produced clearly showed a mother finding her daughter in an alleged sexual assault and her daughter did not cry out for help, speak to her afterw[a]rds to characterize it as an assault, nor were the police called.

III. Whether the evidence failed to sufficiently show, by clear and convincing evidence, that M[r]. Strunk should be an SVP where the sole deciding factor appeared to be his number of offenses with the same victim.

IV. Whether the aggregate sentence of 17.5[4]-35 years was clearly unreasonable, so manifestly excessive as to constitute an abuse of discretion and inconsistent with the protection of the public, gravity of offenses, and defendant's rehabilitative needs?

Appellant's Brief at 11-12 (suggested answers omitted). None of these issues merits relief.

Appellant argues that the evidence at trial was insufficient to convict him of unlawful contact with a minor because there was no evidence that he communicated with Victim to accomplish any of the sexual assaults. Our standard of review in a challenge to the sufficiency of the evidence is well-settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

_____

[4] Contrary to Appellant's assertions, as explained above, his aggregate minimum sentence is 17 years' incarceration, not $17^1/_2$ years' incarceration.

- 6 -

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa. Super. 2014) (quoting

***Commonwealth v. Estepp***, 17 A.3d 939 (Pa. Super. 2011)).

The Crimes Code provides that a person commits the crime of unlawful contact with a minor

> if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:
>
> (1)    Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

18 Pa.C.S. § 6318(a).  The statute defines the contact required as an element of this offense as:

> Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S. § 6318(c).

The element of contact requires proof that the defendant engaged in some verbal or nonverbal communication with the minor for purposes of sexual contact beyond physically approaching the minor and the physical contact of the sexual act itself.  ***Commonwealth v. Davis***, 225 A.3d 582,

587 (Pa. Super. 2019); ***Commonwealth v. Leatherby***, 116 A.3d 73, 79-81 (Pa. Super. 2015).

> Even though the statute is titled "unlawful contact with a minor," it is best understood as "unlawful communication with a minor." By its plain terms, the statute prohibits the act of communicating with a minor for enumerated sexual purposes.

***Commonwealth v. Rose***, 960 A.2d 149, 152-53 (Pa. Super. 2008).

This element of communication is sufficiently proven to support an unlawful contact with a minor conviction where there is evidence that the defendant engaged in nonverbal communication with the minor to bring about the sexual contact or evidence that he engaged in physical contact with the minor separate from the sex crime itself to facilitate the sex crime. ***Leatherby***, 116 A.3d at 80-81 (not responding to minor's knock on door so that she would enter and find him naked constituted nonverbal communication sufficient to support unlawful contact with minor conviction); ***Commonwealth v. Velez***, 51 A.3d 260, 267 (Pa. Super. 2012) (evidence that minor was naked from the waist down and had her knees up was sufficient to prove verbal or nonverbal communication to cause minor to be in that position and state of undress); ***Commonwealth v. Copeland***, No. 2452 EDA 2021, at 6-9 (Pa. Super. August 31, 2022) (unpublished memorandum) (defendant's positioning minor on her stomach and removing her clothes was sufficient communication to support unlawful contact with minor conviction). Evidence that the defendant came to the minor and engaged in sexual contact, however, is insufficient by itself to support an unlawful contact with a minor

conviction. *Leatherby*, 116 A.3d at 80 (vacating unlawful contact with a minor conviction as to minor who testified only that defendant came into her room and touched her breasts and rear end without saying anything); *Commonwealth v. Letham*, No. 1259 WDA 2020, at 5-7 (Pa. Super. January 13, 2022) (unpublished memorandum) (vacating unlawful contact with a minor conviction where evidence with respect to assault on that minor was that defendant came into a room where she was standing and grabbed her breasts without saying anything).

Appellant is correct that there was no evidence that Appellant verbally communicated anything to Victim or gave her nonverbal signals to bring about the sexual contact. Victim did not recall Appellant saying anything to her before or during any of the assaults and did not testify that he said anything sexual or related to the assaults during the intervening weeks and days between the assaults. N.T. Trial, 7/22/21, at 60-64, 66, 70, 105-07, 109, 114-17. Victim testified that immediately after the first assault, Appellant whispered something in her ear and that she could not remember what he said, but that it was not a threat or a request that she not tell her mother. *Id.* at 64, 106.

Victim, however, testified that Appellant removed or pulled down her clothing in order to commit the sexual assaults and aggravated indecent assault. *Id.* at 60-62, 68-69, 75-76, 117. That evidence that Appellant engaged in physical contact with Victim beyond the assaults themselves to

facilitate his sexual contact with Victim is sufficient to prove the element of communication. *Velez*, 51 A.3d at 267; *Copeland*, No. 2452 EDA 2021, at 6-9. Because communication is the only element of unlawful contact with a minor that Appellant contends that the Commonwealth failed to prove and Appellant's acts of removing or pulling down Victim's clothing to facilitate his assaults were sufficient to satisfy that element, Appellant's claim of insufficiency of the evidence fails.

Appellant's contention that he is entitled to a new trial on weight of the evidence grounds is also without merit. A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the evidence at trial was so weak or the verdict was so contrary to the evidence that the verdict shocks the trial court's sense of justice. *Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017); *Commonwealth v. Gilliam*, 249 A.3d 257, 269-70 (Pa. Super. 2021); *Antidormi*, 84 A.3d at 758. Review of the denial of a weight of the evidence motion for a new trial is limited to determining whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence. *Commonwealth v. Clemons*, 200 A.3d 441, 463-64 (Pa. 2019); *Commonwealth v. Delmonico*, 251 A.3d 829, 837 (Pa. Super. 2021). "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence."

*Antidormi*, 84 A.3d at 758 (quoting *Commonwealth v. Clay*, 64 A.3d 1049 (Pa. 2013)) (brackets omitted).

Appellant's only argument that the verdict is against the weight of the evidence is that the testimony of Victim and her mother was not credible because they did not make Appellant leave the home or report the crimes to the police. The trial court did not discuss the evidence at trial in its order denying Appellant's post-sentence motion and did not issue any other opinion. Trial Court Order, 12/30/21; Trial Court Order, 1/25/22. It is clear, however, that the trial court concluded that the verdict did not shock its sense of justice, as it specifically rejected Appellant's claim that he was entitled to new trial, which was based on the claim that the testimony against him was incredible, Trial Court Order, 12/30/21; Post-Sentence Motion at 2-3, and its statements at sentencing show that it found Victim's testimony credible. N.T. SVP & Sentencing Hearing at 33-35. This conclusion of the trial court that the verdict was not against the weight of the evidence was not an abuse of discretion. The fact that a sexual assault victim remains in contact with her attacker after the assaults and does not immediately report the crime does not require a jury to find the victim's testimony incredible or require a conclusion a verdict based on the victim's testimony is shocking or against the weight of the evidence. *Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa. Super. 2017).

Appellant's remaining two issues, his challenges to his SVP designation and sentence, likewise are not grounds for relief. A defendant may be determined to be an SVP if he has been convicted of a sexually violent offense and, following an assessment by an SOAB evaluator, the Commonwealth proves by clear and convincing evidence at an SVP hearing that the defendant suffers from a mental abnormality or personality disorder that makes him likely to engage in predatory sexually violent offenses. 42 Pa.C.S. §§ 9799.12, 9799.24; *Commonwealth v. Hollingshead*, 111 A.3d 186, 189 (Pa. Super. 2015). All five of the offenses of which Appellant was convicted are defined by SORNA as sexually violent offenses on which an SVP determination can be based. 42 Pa.C.S. §§ 9799.12, 9799.14(b)(6), (8), (c)(5), (d)(5), (7).

To prove the element of mental abnormality or personality disorder, "the evidence must show that the defendant suffers from a congenital or acquired condition that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons." *Hollingshead*, 111 A.3d at 189-90 (quoting *Commonwealth v. Stephens*, 74 A.3d 1034 (Pa. Super. 2013)). In addition, it must be shown that the defendant's conduct was predatory. *Hollingshead*, 111 A.3d at 190. Predatory conduct is defined as an "act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or

promoted, in whole or in part, in order to facilitate or support victimization."

42 Pa.C.S. § 9799.12.

In performing an SVP assessment, the evaluator must consider all of the following 15 factors:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S. § 9799.24(b); *see also Hollingshead*, 111 A.3d at 190. An expert testifying in support of an SVP designation must opine on whether the defendant has a propensity to reoffend, but the risk of reoffending is only a factor that the expert must consider in making the SVP assessment, not a separate requirement for SVP designation. *Hollingshead*, 111 A.3d at 190. In evaluating the sufficiency of the evidence to support an SVP designation, this Court may not reweigh the factors that are relevant to whether the defendant is an SVP and must limit its review to whether the factors on which the SVP determination is based are supported by sufficient evidence. *Commonwealth v. Meals*, 912 A.2d 213, 220-25 (Pa. 2006).

The trial court's SVP determination here was based on the testimony of the SOAB evaluator, who was the only witness at the SVP hearing. The SOAB evaluator testified that he considered all of the 15 factors and opined that the nature of the sexual conduct (penetrative assaults), Victim's mental capacity at the time of the assaults (that she was asleep or on pain medications), Appellant's criminal history (consisting of non-sexual assaults, drug crimes and other non-sexual offenses), Appellant's drug use, the fact that he committed multiple assaults on Victim, his age, Victim's age, and the family relationship supported the conclusion that Appellant suffered from antisocial personality disorder, engaged in predatory behavior, and had a propensity to commit sex crimes. N.T. SVP & Sentencing Hearing at 7-12, 16-21. The SOAB evaluator opined based on these factors that Appellant met the criteria to be

classified as an SVP. *Id.* at 13-14. This testimony is sufficient to support the trial court's determination that Appellant was an SVP. ***Commonwealth v. Lippincott***, 208 A.3d 143 (Pa. Super. 2019) (*en banc*), relied on by Appellant does not hold that such evidence is insufficient. Rather, this Court vacated the defendant's SVP designation in ***Lippincott*** on the ground that the trial court applied the wrong burden of proof (an issue on which it was itself subsequently overruled by ***Commonwealth v. Butler***, 226 A.3d 972 (Pa. 2020)), not on insufficiency of the evidence. 208 A.3d at 154.

Appellant argues that the evidence was insufficient to support an SVP designation because there were not multiple victims and that repeated sexual abuse of a single victim cannot support an SVP determination. That, however, is not the law. Contrary to Appellant's contention, a defendant may properly be found to be an SVP where his only sex crimes are against a single victim. ***Stephens***, 74 A.3d at 1035-36, 1039-42 (affirming SVP designation of defendant who committed numerous acts of indecent assault and aggravated indecent assault on a single child victim over a two-year period); ***Commonwealth v. Pagan***, No. 781 MDA 2020, at 4-8 (Pa. Super. December 10, 2020) (unpublished memorandum) (affirming SVP designation of defendant whose only sex crime was multiple indecent assaults against the same child).

Appellant's final issue is a challenge to the discretionary aspects of his sentence. Challenges to the discretionary aspects of a sentence are not

appealable as of right and may be considered only where the following requirements are satisfied: 1) the appellant has preserved the issue in the trial court at sentencing or in a motion for reconsideration or modification of sentence; 2) the appellant has included in his brief a concise statement of the reasons for allowance of appeal of the discretionary aspects of his sentence in accordance with Pa.R.A.P. 2119(f), and 3) the challenge to the sentence raises a substantial question that the sentence is not appropriate under the Sentencing Code. **Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*); **Commonwealth v. Corley**, 31 A.3d 293, 295-96 (Pa. Super. 2011).

Appellant has satisfied these three requirements. Appellant filed a timely post-sentence motion for reconsideration of his sentence in which he argued that the aggregate sentence that the trial court imposed was excessive and unreasonable and has included a Pa.R.A.P. 2119(f) statement in his brief. Post-Sentence Motion at 3; Appellant's Brief at 24-28. Appellant has also raised a substantial question that the sentence is not appropriate under the Sentencing Code. A substantial question exists where the appellant advances a colorable argument that the sentencing judge's actions were inconsistent with a specific provision of the Sentencing Code or were contrary to the fundamental norms of the sentencing process. **Commonwealth v. DiClaudio**, 210 A.3d 1070, 1075 (Pa. Super. 2019); **Antidormi**, 84 A.3d at 759. Appellant asserts that his aggregate sentence of 17 to 35 years'

incarceration, due to imposition of consecutive sentences, is excessive and that the trial court considered only the seriousness of the crimes and not his mitigating evidence or rehabilitative needs. A claim that a sentence was excessive coupled with claim that trial court did not consider defendant's rehabilitative needs presents a substantial question. ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*).

Appellant's challenge to his sentence, however, fails on the merits. Our review of this issue is governed by the following standards:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Caldwell***, 117 A.3d at 770 (quoting ***Commonwealth v. Raven***, 97 A.3d 1244 (Pa. Super. 2014)).

The record here shows that the trial court had reviewed and considered a pre-sentence investigation report before imposing sentence on Appellant. N.T. SVP & Sentencing Hearing at 33. Appellant concedes that the sentences that the trial court imposed were within the standard range of the sentencing guidelines. Appellant's Brief at 46. Where the trial court has reviewed a pre-sentence investigation report prior to sentencing the defendant, this Court presumes that the trial court was aware of and weighed the relevant information regarding the defendant's character and mitigating factors.

*Commonwealth v. Radecki*, 180 A.3d 441, 471 (Pa. Super. 2018); *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013); *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). This Court therefore will not consider a standard range sentence imposed with the benefit of a pre-sentence investigation report excessive or an abuse of the trial court's sentencing discretion. *Radecki*, 180 A.3d at 471; *Corley*, 31 A.3d at 298; *Moury*, 992 A.2d at 171.

The fact that the trial court imposed consecutive sentences for four of Appellant's five crimes does not change this. A trial court has discretion to impose consecutive, rather than concurrent, sentences for crimes committed in the same course of criminal conduct and imposition of consecutive sentences can be found to be unreasonable in only the most extreme circumstances. *Commonwealth v. Brown*, 249 A.3d 1206, 1212 (Pa. Super. 2021); *Radecki*, 180 A.3d at 469-70; *Moury*, 992 A.2d at 171-72.

Here, Appellant committed three separate assaults on Victim days and weeks apart. Appellant is not entitled to a "volume discount" for those separate crimes. *Brown*, 249 A.3d at 1216; *Radecki*, 180 A.3d at 470-71; *Caldwell*, 117 A.3d at 772. While his aggregate sentence is lengthy, it is not of the extreme length that rises to the level of an abuse of discretion. *Compare Brown*, 249 A.3d at 1209-10, 1216-17 (sentence of 16 to 32 years for three firearms convictions was not abuse of discretion); *Caldwell*, 117 A.3d at 767, 770-72 (sentence of 31 to 62 years for aggravated assault,

- 18 -

robbery, theft, and firearms convictions was not abuse of discretion); ***Commonwealth v. Dodge***, 77 A.3d 1263, 1267-68, 1274-78 (Pa. Super. 2013) (aggregate sentence of 40 years, 7 months to 81 years and 2 months incarceration for 2 burglary convictions and over 30 convictions for receiving stolen property and other non-violent crimes was within trial court's discretion); ***with Commonwealth v. Coulverson***, 34 A.3d 135, 138-39, 146-50 (Pa. Super. 2011) (maximum sentence of 80 or 90 years for a single episode of sexual assaults and robbery, a second robbery, and multiple burglaries and thefts was abuse of discretion); ***Commonwealth v. Dodge***, 957 A.2d 1198, 1199, 1201-02 (Pa. Super. 2008) (sentence of $58^1/_2$ to 124 years' incarceration for 2 burglary convictions and over 30 convictions for receiving stolen property and other non-violent crimes was abuse of discretion); ***Commonwealth v. Whitman***, 880 A.2d 1250, 1251-52, 1254 (Pa. Super. 2005), ***rev'd on other issue***, 918 A.2d 111 (Pa. 2007) (sentence of 39 to 78 years' incarceration for multiple nonviolent burglaries and other property crimes was abuse of discretion); ***Commonwealth v. Bauer***, 604 A.2d 1098, 1101-02 (Pa. Super. 1992), ***rev'd on other grounds***, 618 A.2d 396 (Pa. 1993) (sentence of 27½ to 55 years' incarceration for multiple drug sales was abuse of discretion); ***Commonwealth v. Simpson***, 510 A.2d 760, 761, 763-64 (Pa. Super. 1986) (sentence of 30 to 60 years' incarceration for multiple robberies was abuse of discretion).

For the foregoing reasons, we conclude that all of the issues raised by Appellant in this appeal lack merit. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2023