J-S37019-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
CHRIS BEARD :
:
Appellant : No. 3306 EDA 2019

Appeal from the PCRA Order Entered October 15, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001613-2016

BEFORE: SHOGAN, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.: Filed: December 30, 2020

Appellant Chris Beard appeals from the order denying his petition seeking relief from the enforcement of the current version of Subchapter H of the Pennsylvania Sexual Offender Notification and Registration Act (SORNA).[1] Appellant contends that the current version of Subchapter H is punitive and violates the constitutional prohibitions against ex post facto laws. Additionally, Appellant claims that the current version of Subchapter H violates numerous other protections in the United States and Pennsylvania Constitutions. Because Appellant failed to establish which subchapter of the current version of SORNA applies to his convictions, we affirm the dismissal of his petition.

---

[1] 42 Pa.C.S. § 9799.10-9799.42 (eff. Feb. 21, 2018).

On January 26, 2016, Detective James Reape of the Montgomery County Detective Bureau filed a criminal complaint based on the minor complainant's report that Appellant had molested her. On June 22, 2016, the Commonwealth filed a twenty-eight-count bill of information against Appellant. The prefatory paragraph of the information stated that the offenses occurred "between the 1st day of November, 2007 and the 20th day of November, 2015." Information, 1/26/16. The recitation of the counts did not further specify the dates of the offenses or contain other information to determine whether the offenses occurred before, or on or after, December 20, 2012.

On March 16, 2017, Appellant, who was represented by counsel, appeared at a guilty plea hearing to enter a negotiated plea to one count of involuntary deviate sexual intercourse (IDSI) with a child under thirteen years of age and two counts of aggravated indecent assault (AIA) of a child under thirteen years of age.[2] The Commonwealth read the following factual basis for the plea into the record:

> [The Commonwealth]. Sir, by pleading guilty today, you're admitting that on multiple occasions between November of 2007

_____

[2] 18 Pa.C.S. §§ 3123(b) and 3125(b). Appellant's plea agreement also called for an aggregate sentence of nine to twenty years' imprisonment, which the trial court imposed the same day it accepted Appellant's plea. The Commonwealth apprised Appellant of a lifetime registration requirement under "Megan's Law." Although the parties agreed to defer a sexually violent predator (SVP) assessment and hearing until after sentencing, the trial court did not hold an SVP hearing. PCRA Ct. Op., 1/14/20, at 1.

to October of 2015, you had sexual contact with [the complainant], date of birth [in 2003]; is that correct?

[Appellant]. I didn't have sex with her.

[The Commonwealth]. You had sexual contact with her. That's what you're -- those are the facts that you're admitting today?

[Appellant]. Yes.

[The Commonwealth]. Specifically, you're admitting that on at least two occasions, you penetrated her genitals with your finger; is that correct?

[Appellant]. No.

[The Commonwealth]. You understand that in order to plead guilty, you have to admit that a certain set of facts are true.

Do you understand that?

[Appellant]. Yes.

[The Commonwealth]. Okay. So by pleading guilty today to aggravated indecent assault of a child less than 13 years old, you are admitting today that you penetrated [the complainant's] genitals with your finger on at least two occasions; is that correct?

[Appellant]. Yes.

[The Commonwealth]. You're also admitting that on at least one other occasion, you performed oral sex on her; is that correct?

[Appellant]. Yes.

[The Commonwealth]. And you did that -- those acts without her consent; is that correct?

[Appellant]. Yes.

N.T. Guilty Plea Hr'g, 3/16/17, at 8-9. The Commonwealth recited no additional facts regarding when the three incidents allegedly occurred. That same day, the trial court sentenced Appellant to the agreed-upon sentence of nine to twenty five years' imprisonment. The trial court also advised Appellant

of the requirement to register as a sexual offender for life based on his conviction. Appellant did not file post-sentence motions or take a direct appeal from the imposition of sentence.

Approximately four months after the guilty plea hearing, our Supreme Court decided **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (plurality). The **Muniz** Court held that former Subchapter H, also known as SORNA I, was "punitive in effect . . . ." **Muniz**, 164 A.3d at 1218. The High Court also concluded that SORNA I violated ex post facto principles when applied to individuals who committed a sexual offense before December 20, 2012, the effective date of the former version of SORNA. **See id.** at 1223; **see also Commonwealth v. Lippincott**, 208 A.3d 143, 150 (Pa. Super. 2019) (*en banc*).

In response to **Muniz**, the General Assembly amended SORNA I to include Acts 10 and 29 of 2018 (SORNA II). **See** 2018, Feb. 21, P.L. 27, No. 10 (Act 10); **see also** 2018, June 12, P.L. 140, No. 29, (Act 29). SORNA II divides sex offender registrants into two distinct subchapters—current Subchapter H, which includes individuals who were convicted of a sexually violent offense that occurred on or after December 20, 2012, and Subchapter I, which includes individuals who were convicted of a sexually violent offense that occurred "on or after April 22, 1996, but before December 20, 2012," or who were required to register under a former sexual offender registration law on or after April 22, 1996, but before December 20, 2012, and whose

registration requirements had not yet expired. ***See*** 42 Pa.C.S. § 9799.11(c) and 42 Pa.C.S. § 9799.52, respectively.

Meanwhile, on December 18, 2017, Appellant filed a timely *pro se* Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, petition seeking to withdraw his guilty plea. The PCRA court appointed present counsel to represent Appellant.

On May 18, 2018, present counsel filed an amended petition challenging Appellant's registration requirements under SORNA I based on ***Muniz***. On December 7, 2018, Appellant filed a second amended petition,[3] with leave of the court, challenging his registration requirements under "Act 10." Appellant claimed that with the "offense date spanning eight (8) years[,]" both current Subchapter H and Subchapter I "could be viewed as applicable." Second Am. Pet., 12/7/18, at ¶ 13. Nonetheless, Appellant asserted that "SORNA [II] in its entirety cannot be applied to him based upon the same reasoning set forth in ***Muniz***." ***Id.*** Appellant continued that "he is serving a lifetime registration requirements sentence pursuant to SORNA [II] that violates the Federal and State Constitution[s]" because it:

---

[3] Appellant filed his second amended petition under the PCRA. However, we note that our Supreme Court recently held that the PCRA is not the exclusive means for challenging the constitutionality of a registration requirement statute. ***See Commonwealth v. Lacombe***, 234 A.3d 602, 618 (Pa. 2020). Nevertheless, we will continue to refer to the PCRA for the sake of consistency with the record, the PCRA court's opinion, and the parties' briefs.

a) . . . is punitive under the reasoning of ***Muniz***, which is an unlawful sentence in that it violates the Ex Post Facto clauses of the federal and state constitutions;

b) . . . denies [Appellant] due process under Articles I and XI of the Pennsylvania Constitution because it creates an irrebuttable presumption that those convicted of enumerated offenses "pose a higher risk of committing additional sexual offenses," depriving those individuals of their fundamental right to reputation;

c) . . . denies [Appellant] procedural due process under Article XI of the Pennsylvania constitution because it unlawfully impinges the right to reputation without notice and an opportunity to be heard;

d) . . . denies [Appellant] procedural due process under the Fifth and Fourteenth Amendments to the United States Constitution because it unlawfully restricts liberty and privacy without notice and an opportunity to be heard;

e) . . . violates substantive due process under the state and federal constitutions, U.S. Const. Amend. XIV; Pa. Const. Art. I, § 1, because [it] deprives individuals of inalienable rights and fails to satisfy strict scrutiny;

f) . . . constitutes criminal punishment and therefore violates the separation of powers doctrine because it usurps the exclusive judicial function of imposing a sentence; and

g) . . . constitutes criminal penalties and therefore the imposition of mandatory lifetime sex offender registration for nearly all Tier III offenses is a cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution.

***Id.*** at ¶ 33 (some formatting altered). Appellant did not attach any exhibits or studies to his second amended petition.

The Commonwealth filed an answer and motion to dismiss Appellant's second amended petition asserting that current Subchapter H applies to

Appellant because the "criminal episode did not end until November 20, 2015" and Appellant's constitutional challenges lacked merit. Commonwealth's Answer & Mot. to Dismiss, 4/12/19, at ¶¶ 18, 19-104. The Commonwealth, in a footnote, noted that even if Subchapter I applied, the registration requirements in that subchapter are less onerous than current Subchapter H. *Id.* at 8 n.6.

The PCRA court held a hearing on August 30, 2019. In relevant part, present counsel discussed this Court's decision in *Commonwealth v. Alston*, 212 A.3d 526 (Pa. Super. 2019), and asserted that even if Appellant's constitutional challenges failed, *Alston* "would provide further support for [the trial court] to impose the lower reporting requirements under Subchapter I." N.T. PCRA Hr'g, 8/30/19, at 19. The Commonwealth maintained its position that current Subchapter H applied. *Id.* at 28-29. Specifically, the Commonwealth asserted that *Alston* was distinguishable from Appellant's case because Appellant pled guilty to offenses that occurred within a range of time that ended "after SORNA [I] had become effective." *Id.* at 29. Furthermore, the Commonwealth emphasized that *Alston* involved allegations that the defendant's crimes ended in May 2013, only months after the December 20, 2012—the effective date of SORNA I, which is a threshold date for applying the current version of Subchapter H in SORNA II. *Id.* at 31. The Commonwealth therefore argued that *Alston* was distinguishable because Appellant pled guilty based on a course of criminal conduct that was

ongoing for more than three years after the date for applying Subchapter H of SORNA II. *Id.* at 32.

The PCRA court took the matter under advisement after the hearing. On October 15, 2019, the PCRA court entered the order denying relief.

Appellant timely filed a notice of appeal and complied with the PCRA court's order to file and serve a Pa.R.A.P. 1925(b) statement that essentially restated Appellant's constitutional challenges to SORNA II as a whole. The PCRA court filed a responsive opinion addressing SORNA II as a whole, concluding that it was not punitive, and finding Appellant's due process claims waived because Appellant failed to develop them in his second amended petition or at the hearing. The PCRA court, however, did not determine whether current Subsection H or Subsection I of SORNA II applied. Moreover, nothing in the record suggests that Appellant received notification of his registration requirements under current Subchapter H or Subsection I, nor has Appellant sought to supplement the record with such a notification.

While this appeal was pending, our Supreme Court decided two cases concerning SORNA II. First, in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020), the High Court addressed Subchapter H, vacated a trial court's order finding it unconstitutional, and remanded the matter to the trial court for further consideration. In that case, the petitioner presented studies challenging the General Assembly's policy finding that sex offenders pose a high risk of committing additional sexual offenses and asserted that the irrebuttable presumption of a high risk of recidivism violated due process.

- 8 -

The ***Torsilieri*** Court declined to reach the constitutional challenge raised by the petitioner and remanded the case for further development of the record to "allow the parties to address whether a consensus has developed to call into question the relevant legislative policy decisions impacting offenders' constitutional rights." ***Torsilieri***, 232 A.3d at 596. The Court emphasized that "the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements." ***Id.*** Nevertheless, the Court also stressed that it would "not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights." ***Id.***

Second, in ***Lacombe***, the High Court addressed Subchapter I, noting that it was "markedly different from the version of SORNA invalidated in ***Muniz***." ***Lacombe***, 234 A.3d at 606. The ***Lacombe*** Court applied the same ***Mendoza-Martinez***[4] framework employed by the Court in ***Muniz***, ultimately concluding that "Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." ***Id.*** at 605-06.

In the present appeal, Appellant raises the following issues for review:

> Whether the PCRA Court erred in dismissing [A]ppellant's Second Amended Petition for Post-Conviction Relief, which averred that he is serving a lifetime registration requirements sentence pursuant to the Sexual Offender Registration and Notification Act

---

[4] ***Kennedy v. Mendoza–Martinez***, 372 U.S. 144 (1963).

("SORNA"), 42 Pa.C.S. §§ 9799.10-9799.41, effective December 20, 2012 through February 20, 2018, and as amended, 42 Pa.C.S. §§ 9541, et. seq., that violates both the Federal and State Constitutions in the following ways:

(1) SORNA, as amended, is punitive under the reasoning of [*Muniz*] which constitutes an unlawful sentence in that it violates the Ex Post Facto clauses of the Federal and State Constitutions;

(2) SORNA, denies [A]ppellant due process under Article I Section 1 of the Pennsylvania Constitution because it creates an irrebuttable presumption that those convicted of enumerated offenses "pose a higher risk of committing additional sexual offenses" depriving those individuals of their fundamental right to reputation;

(3) SORNA denies [A]ppellant procedural due process under Article I Section 1 of the Pennsylvania Constitution because it unlawfully impinges the right to reputation without notice and an opportunity to be heard;

(4) SORNA denies [A]ppellant procedural due process under the Fifth and Fourteenth Amendments to the Unites States Constitution because it unlawfully restricts liberty and privacy without notice and an opportunity to be heard;

(5) SORNA violates substantive due process under the Federal and State Constitutions, U.S. Const. Amend. XIV; Pa. Const. Art. I, § 1, because SORNA deprives individuals of inalienable rights and fails to satisfy strict scrutiny;

(6) SORNA constitutes criminal punishment and therefore violates the separation of powers doctrine because it usurps the exclusive judicial function of imposing a sentence; and

(7) SORNA constitutes criminal penalties and therefore the imposition of mandatory lifetime sex offender registration for nearly all Tier III offenses is a cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution.

Appellant's Brief at 4-5.

On appeal, Appellant focuses his claims on the provisions of current Subchapter H. *See e.g. id.* at 11-21 (applying a *Muniz*/*Martinez-Mendoza* analysis to the provisions of current Subchapter H), 21-26 (applying a *Torsilieri* claim to 42 Pa.C.S. § 9799.11(a)(4), which contains the legislative finding that sexual offenders pose a high risk of recidivism), 26-32 (discussing 42 Pa.C.S. § 9799.16(b) and (c)). Appellant for the first time on appeal contends that current Subchapter H applies. *See id.* 13 n.6.

As a preliminary matter, the question of whether current Subchapter H or Subchapter I of SORNA II applies to Appellant is a crucial starting point.[5] Notably, as in the PCRA court, Appellant refers to *Alston*. However, Appellant now concedes that he "admitted to crimes that occurred after December 22, 2012," such that current Subchapter H of SORNA II would apply. *Id.* at 13 n.6. The Commonwealth, in response, maintains its position that Subchapter H applies to Appellant's guilty plea.

On appeal, it appears that Appellant may have conceded that Subchapter H applies because the dates of some of his offenses might have straddled the operative date for Subchapter H, which is December 22, 2012. Moreover, it is well settled that the Commonwealth may sustain a conviction without proving the specific date a sexual offense occurred. *See*

_____

[5] We acknowledge that our Supreme Court has instructed that "in determining whether a statute is civil or punitive," a law's entire statutory scheme must be examined. *Muniz*, 164 A.3d at 1208. However, our Supreme Court has separately examined current Subchapter H and Subchapter I in *Torsilieri* and *Lacombe* and did not review SORNA II as a whole.

- 11 -

***Commonwealth v. G.D.M., Sr.***, 926 A.2d 984, 989-90 (Pa. Super. 2007) (noting that "the Commonwealth need not always prove a single specific date of the crime" and that "[c]ase law has established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct" (citations omitted)). However, the proper application of SORNA II requires consideration of when an offense occurred. Specifically, under Section 9799.12, a "sexually violent offense" requiring Tier I, Tier II, or Tier III registration under current Subchapter H, is an offense "committed on or after December 20, 2012, for which the individual was convicted." 42 Pa.C.S. § 9799.12.

As to the application of Subchapter I, 9799.55(b) states, in relevant part:

> **(b) Lifetime registration.—**The following individuals shall be subject to lifetime registration:
>
> \* \* \*
>
> (2) Individuals convicted:
>
> > (i)(A) in this Commonwealth of the following offenses, if committed on or after April 22, 1996, but before December 20, 2012:
> >
> > \* \* \*
> >
> > 18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse);
> >
> > \* \* \*
> >
> > 18 Pa.C.S. § 3125 (relating to aggravated indecent assault); or

42 Pa.C.S. § 9799.55(b)(2).

In **Alston**, this Court addressed the question of which subsection of SORNA II applies when the Commonwealth obtains a conviction based on allegations that offenses occurred with a range of time.  In that case, a jury convicted the defendant of numerous counts of statutory sexual assault, rape of a child and IDSI of a child less than sixteen, and one count each of indecent assault of a child less than thirteen, sexual abuse of children, criminal use of a communication facility, unlawful contact with a minor, and corruption of minors.  **Alston**, 212 A.3d at 527.  The defendant's convictions were based on evidence that he had an ongoing sexual relationship with the victim between May 2009 and May 2013, when the victim was between eleven and fifteen years old.  **Id.** at 528, 530.  The trial court designated the defendant an SVP under SORNA I.  **Id.** at 528.

Following a reinstatement of his direct appeal rights by the PCRA court, the defendant in **Alston** challenged his SVP designation and lifetime reporting requirement under current Subchapter H.  **Id.**  Relying on **Muniz** and this Court's decision in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) (**Butler I**), *rev'd*, 226 A.3d 972 (Pa. 2020) (**Butler II**), the **Alston** Court vacated the defendant's SVP designation.  **Id.**  The Court explained:

> [T]he jury did not specifically find the dates when [the defendant] committed his offenses.  [The defendant's] offenses straddle the operative dates for Subchapters H and I [of SORNA II].  Without a specific finding by the chosen factfinder of when the offenses occurred, [the defendant] is entitled to the lowest punishment.  Therefore, on remand, the court must impose SORNA requirements under Subchapter I.

*Id.* at 530 (citations omitted).

Instantly, it is undisputed that Appellant pled guilty to allegations that "on multiple occasions between November of 2007 to October of 2015, [he] had sexual contact with [the complainant]." N.T. Guilty Plea Hr'g at 8. Specifically, Appellant admitted that he "penetrated [the complainant's] genitals with [his] finger on at least two occasions" and "on at least one other occasion, he performed oral sex on her." Although the instant case involved a guilty plea rather than a jury trial, Appellant's case is similar to *Alston* in that there were no allegations that the offenses occurred sometime on or after December 22, 2012, a fact that would implicate the applicability of current Subchapter H to Appellant's convictions.[6] *See Alston*, 212 A.3d at 530.

Moreover, our review of the cases cited by the Commonwealth do not settle the question of which subchapter of SORNA II applies. Specifically, the Commonwealth cites *Commonwealth v. Witmayer*, 144 A.3d 939 (Pa. Super. 2016), *United States v. Kohl*, 972 F.2d 294 (9th Cir. 1992), and an unpublished memorandum by this Court that was filed in 2017. *Witmayer*,

---

[6] Although this Court has not issued a published opinion applying *Alston* to a guilty plea involving a range of offenses that straddle the operative dates of current Subchapter H and I, this Court, in an unpublished memorandum filed after May 1, 2019,has indicated that *Alston* would apply. *See Commonwealth v. Gonzalez*, 2124 EDA 2018, 2019 WL 4234550, at *2 n.7 (Pa. Super. filed Sept. 6, 2019) (unpublished mem.) (indicating that *Alston* applied because the defendant's offenses in one docket occurred between 2001 and 2008, and the plea hearing transcript in another docket indicated that the defendant's offenses "took place between 'roughly' 2012 and 2014, which straddle the operative dates for [current] Subchapters H and I"); *see also* Pa.R.A.P. 126(b) (eff. May 1, 2019).

however, involved the interpretation of the phrase "same criminal episode" for the purposes of venue under Pa.R.Crim.P. 130. *Kohl* involved a federal defendant who pled guilty to one count of conspiracy, which began in 1987, but engaged in overt acts in furtherance of the conspiracy until 1988. In the interim, Congress adopted the United States Sentencing Guidelines, which applied to offenses committed after November 1, 1987. The United States Ninth Circuit Court of Appeals rejected the defendant's argument that the application of the federal sentencing guidelines violated the ex post facto clause, reasoning that

> the defendant committed specific overt acts in furtherance of the conspiracy, any one of which would fulfill the required elements of the conspiracy. He committed many overt acts after the guidelines' effective date. The government could have based the Indictment entirely on the events occurring after the effective date, or even just those events occurring in April 1988. **[The defendant] pleaded guilty to count 1 of the Indictment, which included the overt acts committed after the effective date.**

*Kohl*, 972 F.2d at 298 (emphasis added).

Unlike *Witmayer* and *Kohl*, Appellant's convictions for IDSI and AIA do not involve a "criminal episode" within the meaning of a rule of criminal procedure, nor do they involve an element that would subsume a series of overt acts or a course of conduct.[7] *See* 18 Pa.C.S. §§ 3123(b), 3125(b).

_____

[7] To the extent the Commonwealth cites an unpublished memorandum filed before May 1, 2019, we decline to address it on appeal. *See* Pa.R.A.P. 126(b).

Accordingly, we conclude that the question of which subchapter will apply to Appellant remains in dispute.[8]

Lastly, we note that the PCRA court did not discuss **Alston** or resolve the issue of whether current Subchapter H or Subchapter I should apply. To the contrary, the PCRA court addressed Appellant's claims in his second amended petition that SORNA II, as a whole, was unconstitutional. **See** PCRA Ct. Op. at 12-14. Additionally, the PCRA court's opinion includes discussions of both Subchapter H and Subchapter I and held that the entirety of SORNA II was not punitive. **See** PCRA Ct. Op. at 12-14.

Based on the foregoing, we conclude that Appellant's challenges to Subchapter H raised for the first time on appeal are waived because he did not present them to the PCRA court, and therefore his arguments have not been preserved for appellate review. **See** Pa.R.A.P. 302(a); **Commonwealth v. Truong**, 36 A.3d 592, 598 (Pa. Super. 2012) (*en banc*). Appellant's boilerplate claims before the PCRA court challenged the constitutionality of SORNA II as a whole, but did not present his current claims raised on appeal

_____

However, we note that the underlying facts in that case, similar to **Kohl**, involved an offense in which a course of conduct was an element.

[8] We note the Commonwealth's observation that **Alston** relied on this Court's decision in **Butler I**, which our Supreme Court reversed in **Butler II**. However, **Butler II** reversed **Butler I** on the basis that the registration, notification, and counseling requirements of SORNA I were not excessive when applied to SVPs and, therefore, did not constitute criminal punishment. **See Butler II**, 226 A.3d at 993. It does not appear that **Butler II**'s holding directly overrules **Alston**'s holding regarding offenses that straddle the effective date of current Subchapter H.

that focus on Subchapter H. Moreover, unlike the defendant in **Torsilieri**, Appellant presented no evidence to refute the General Assembly's finding of a high risk of recidivism despite having the opportunity to do so at an evidentiary hearing. As Appellant has failed to do so, we conclude that Appellant's challenge that SORNA II is unconstitutional fails.

Moreover, as Appellant bore the burden of establishing the unconstitutionality of a statute, it follows that Appellant was required to argue to the PCRA court which subchapter applies as a threshold for a constitutional challenge and to sustain his challenge with affirmative proof and legal support. **See Torsilieri**, 232 A.3d at 575 (noting that "'a party challenging a statute must meet the high burden of demonstrating that the statute clearly, palpably, and plainly violates the Constitution'" (citation omitted)). Here, Appellant did not attempt to establish which subchapter applied. Accordingly, uncertainty remains as to whether Appellant is actually subject to current Subchapter H or Subchapter I. Although Appellant has attempted to address these issues on appeal, he did not preserve his arguments in the PCRA court. **See** Pa.R.A.P. 302(a); **Truong**, 36 A.3d at 598.

For these reasons, we affirm the PCRA court's order dismissing Appellant's PCRA petition without prejudice to Appellant's right to file a petition challenging his registration requirements. **See Lacombe**, 234 A.3d at 618.

Order affirmed.

President Judge Emeritus Ford Elliott joins the memorandum.

Judge Shogan concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/30/20