J-A05025-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AARON KING | : | |
| | : | |
| Appellant | : | No. 657 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 21, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000905-2010

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| AARON KING | : | |
| | : | |
| Appellant | : | No. 660 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 21, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000906-2010

BEFORE:   OLSON, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED: APRIL 9, 2021**

Appellant Aaron King appeals from the judgments of sentence imposed
following his resentencing for involuntary deviate sexual intercourse (IDSI)—
forcible compulsion, IDSI—person less than thirteen, aggravated indecent

_____

[*] Former Justice specially assigned to the Superior Court.

assault—less than thirteen, and two counts each of unlawful contact with a minor, sexual assault, indecent assault—person less than thirteen, corruption of minors, and statutory sexual assault.[1]  Appellant challenges the reporting and registration requirements applicable to him under the Sexual Registration and Notification Act[2] (SORNA II) and his designation as a sexually violent predator (SVP).  He also claims that the aggregate sentence of twenty to forty years of incarceration was manifestly unreasonable.   For the following reasons, we affirm the judgment of sentence but remand to the trial court to notify Appellant of his registration requirements as an SVP.

This Court summarized the facts underlying Appellant's convictions as follows:

> In 2006, [the victims, S.C. and her cousin K.R.], then ten (10) years old, resided at the home of their aunt, [C.C.], Appellant, and several others, at 1334 Pike Street, Philadelphia, PA.  [S.C.] testified that at some point during that year, she went into the

---

[1] 18 Pa.C.S. §§ 3123(a)(1), 3123(a)(6), 3125(a)(7), 6318(a)(1), 3124.1, 3126(a)(7), 6301(a)(1), and 3122.1, respectively.

Although not raised by the parties in this or Appellant's prior appeal, we observe that the Commonwealth charged Appellant with IDSI with a child, but listed the offense as a violation of Section 3123(a)(6).  Section 3123(a)(6), was repealed and replaced with IDSI with a child at Section 3123(b) effective February 14, 2003, prior to the offense and conviction in this matter.  The definition of the offense and the elements of IDSI of a child remain the same in former Section 3126(a)(6) and current Section 3126(b).  Further, there is no indication that Appellant suffered any prejudice at trial, sentencing, and his designation of as a sex offender and SVP due this error.  Therefore, we remand to the trial court to correct the record and ensure that it specifies the correct Crimes Code section.

[2] 42 Pa.C.S. §§ 9799.51-9799.75.

bedroom her aunt shared with Appellant to get some clothes stored there, whereupon Appellant asked her to get some whipped cream for him. When she returned with the whipped cream, Appellant was sitting on the bed with his robe open. Appellant then forced the minor [victim] to fellate him after he applied the whipped cream to his penis. Appellant then instructed [S.C.] to tell [K.R.] to come to the bedroom. [K.R.] testified that when she came into the room she observed Appellant sitting on the bed and [S.C.] fellating him. Appellant then directed [K.R.] to put her mouth on his penis to fellate him and she complied.

[S.C.] testified of another occasion when she was thirteen (13) years of age during which Appellant sexually abused her. [S.C.] stated that she was in her bedroom after taking a shower when Appellant came in, locked the door behind him, pushed her down onto a couch, and inserted his penis into her vagina. [S.C.] also testified of a third incident in her aunt's bedroom where Appellant pulled her onto the bed, removed her pants, and inserted his penis into her vagina.

[K.R.] described several additional incidents during which Appellant had sexual contact with her. [K.R.] stated that on one occasion she and [S.C.] were getting dressed in their bedroom when Appellant entered the room and fingered both of their vaginas. When [K.R.] told Appellant that he was hurting her, he stopped and left the room. Another incident occurred while she was bent over a bin attempting to retrieve detergent when Appellant came behind her, pushed her head and torso into the bin, pulled down her under garment, and inserted his penis into her vagina. She testified as to yet another incident while she was asleep on the living room couch and her Aunt [C.C.] instructed Appellant to wake her. Appellant then began rubbing her legs and touching her in a sexual way. [K.R.] told her aunt what occurred and she then yelled at Appellant.

Finally, both [victims] testified of an incident that took place in the kitchen when [K.R.] was 14 years old. While bent over the sink Appellant came behind [K.R.] and forced himself onto her. [S.C.] testified that she entered the kitchen and left after she observed Appellant with his penis out and [K.R.] with her pants down. During that incident Appellant pulled [K.R.'s] skirt up, pulled her underpants down, and inserted his penis into her vagina. After the incident[,] [K.R.] left the kitchen crying and [K.R.] told [S.C.] what happened. Andrew Collins, who the children referred to as Mr. Drew and who lived in the house at the time, was nearby and

inquired about what had occurred whereupon [S.C.] described what she had seen in the kitchen. Collins threatened to report this to the girls' uncle, however, they persuaded him otherwise, arguing that their uncle would do something harmful to Appellant which would cause [their uncle] trouble.

Throughout their ordeal, [the victims] wrote letters describing the incidents of sexual contact with Appellant. They placed the letters in a shoebox and left it at a location in the living room of their grandmother's home which was located across from their Aunt [C.C.'s] house, hoping the box would be found. Y.R., [K.R.'s] mother, found and read the letters. The police were then contacted and [the victims] gave a formal statement to detectives.

The defense presented the testimony of Andrew Collins who stated that he did not recall having a conversation with either [the victims] about their being sexually assaulted and stated that they did not tell him that Appellant raped them.

The defense also presented the testimony of Stephanie, [C.C.'s] daughter, who stated that Appellant and her mother argued about [the victims]' constant presence at [the] house and that Appellant accused the children of being disrespectful to him. Appellant told [C.C.] that he did not want to be around them. Eventually Appellant moved out of the house and, in a[n] effort to appease Appellant, [C.C.] limited the [victims]' visits.

*Commonwealth v. King*, 2263 EDA 2013 at 2-3 (Pa. Super. filed Oct. 17, 2014) (unpublished memorandum) (record citation and footnote omitted).

On July 30, 2012, the jury convicted Appellant of IDSI—forcible compulsion, IDSI—person less than thirteen, aggravated indecent assault—less than thirteen, and two counts each of unlawful contact with a minor, sexual assault, indecent assault—person less than thirteen, corruption of minors, and statutory sexual assault.

On July 12, 2013, the trial court conducted an SVP and sentencing hearing. Following the hearing, the court sentenced Appellant to an aggregate

sentence of twenty to forty years of imprisonment, designated him an SVP, and informed him that he would be subject to lifetime registration under SORNA I.[3]  On October 17, 2014, this Court affirmed the judgment of sentence.

_____

[3] At the time of Appellant's original SVP and sentencing hearing, SORNA I was in effect.  **See** 42 Pa.C.S. §§ 9799.10-9799.41 (subsequently amended 2018).  On July 19, 2017, our Supreme Court decided **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017).  The **Muniz** Court held that SORNA I's registration requirements were "punitive in effect[.]"  **Muniz**, 164 A.3d at 1218.  As such, the Court concluded that SORNA I violated *ex post facto* principles when applied to individuals who, like Appellant, committed a sexual offense before December 20, 2012, the effective date of SORNA I.  **See id.** at 1223; **see also Commonwealth v. Lippincott**, 208 A.3d 143, 150 (Pa. Super. 2019) (*en banc*).

Furthermore, in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) (**Butler I**), *rev'd* 226 A.3d 972 (Pa. 2020), this Court declared unconstitutional 42 Pa.C.S. § 9799.24(e) in SORNA I, which identified the trial court as factfinder and specified a clear and convincing evidence burden of proof to designate a defendant an SVP.  **See Butler I**, 173 A.3d at 1217-18 (applying **Apprendi v. New Jersey**, 530 U.S. 466 (2000), and **Alleyne v. United States**, 570 U.S. 99 (2013), based on **Muniz**'s holding that SORNA I was punitive).  The General Assembly thereafter amended SORNA I and passed SORNA II, in part to address **Muniz** and **Butler I**.  SORNA II divides sex offender registrants into two distinct subchapters—Subchapter H and Subchapter I.  Subchapter H includes individuals who were convicted for an offense that occurred on or after December 20, 2012, and whose registration requirements had not yet expired.  **See** 42 Pa.C.S. § 9799.11(c).  Subchapter I includes individuals who were convicted for an offense that occurred "on or after April 22, 1996, but before December 20, 2012," or who were required to register under a former sexual offender registration law on or after April 22, 1996, but before December 20, 2012, and whose registration requirements had not yet expired.  **See** 42 Pa.C.S. § 9799.52.

On March 26, 2020, while this appeal was pending, our Supreme Court reversed this Court's holding in **Butler I**, and held that the registration, notification, and reporting requirements applicable to SVPs "do not constitute

On April 18, 2016, Appellant filed a *pro se* petition pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, which raised various claims of ineffective assistance of counsel. Appointed counsel filed amended petitions adding additional claims with respect to the imposition of illegal mandatory minimum sentences and arguing that Appellant's designation as an SVP and the reporting requirements imposed pursuant to SORNA I were unconstitutional.[4]

On August 24, 2018, in its motion to dismiss the PCRA petition, the Commonwealth conceded that Appellant's mandatory minimum sentences were illegal and that the judgments of sentence should be vacated. The Commonwealth also noted that Appellant's status as an SVP may be illegal in light of **Butler I**, but asked the PCRA court to stay its decision—and resentencing in general—pending the resolution of **Butler II** and **Lacombe**.

---

criminal punishment." **Commonwealth v. Butler**, 226 A.3d 972, 993 (Pa. 2020) (**Butler II**). On July 21, 2020, our Supreme Court held that Subchapter I "is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." **Commonwealth v. Lacombe**, 234 A.3d 602, 605-06 (Pa. 2020).

[4] Specifically, Appellant filed a counseled supplemental amended PCRA petition on February 12, 2018, in which he claimed that his designation as an SVP with the mandatory life-long reporting requirement was unconstitutional pursuant to **Butler I** and **Alleyne**. On July 23, 2018, Appellant filed a fourth supplemental amended petition arguing that the imposition of two minimum mandatory sentences was also illegal and unconstitutional pursuant to **Alleyne**. We note that Appellant also filed several *pro se* amendments to his PCRA petition. However, because Appellant was counseled at the time, we have not considered those amendments. **See Commonwealth v. Blakeney**, 108 A.3d 739, 762 (Pa. 2014) (stating that "no defendant has a constitutional right to hybrid representation, either at trial or on appeal").

The trial court ordered a pre-sentence investigation report (PSI) and a mental health evaluation for the purpose of resentencing. Appellant also filed a pre-sentence memorandum asserting, in part, that (1) Appellant's designation as an SVP was unconstitutional in light of **Muniz** and **Butler I**, (2) the reporting requirements violated his due process and reputational rights, and (3) the "new Megan's law statute" could not be applied retroactively because it was an unconstitutional *ex post facto* law. Appellant's Pre-Sentence Mem., 9/9/19, at 2. Appellant requested that the court vacate any sexual offender registration requirement. **Id.** at 1-2.

On January 21, 2020, the parties appeared before the trial court. The parties and the court initially discussed whether SORNA was at issue. Specifically, when the Commonwealth asserted that Appellant was still subject to lifetime registration, Appellant's counsel objected and claimed that the registration period was fifteen years. The court indicated that "under the current state" of the law, it should "take away" the SVP designation. N.T. Resentencing Hr'g, 1/21/20, at 11. In response, the Commonwealth reiterated its request for a stay of that determination pending the decision in **Butler II**. Ultimately, the court granted Appellant's PCRA petition in part, stating: "PCRA relief is granted as to sentencing by agreement, original sentence vacated, and we are now here at sentencing for the resentencing where there was an illegal mandatory imposed on two of the charges, involuntary deviate sexual intercourse and aggravated indecent assault." **Id.** at 16. Immediately before the court announced its order, Appellant's counsel

confirmed that the hearing following the grant of PCRA relief was limited "just to resentencing." *Id.* at 15.

The trial court then heard from the Commonwealth and defense counsel regarding the sentencing guidelines and Appellant's offense gravity and prior record score. The court also heard from Appellant's counsel concerning Appellant's behavior in prison and completion of various prison programs and classes. *See id.* at 16-17. The Commonwealth reread the victim statements at the request of the victims. *See id.* at 19-23. The court also considered the PSI, statements made by defense mitigation witnesses, and all other evidence that had been introduced at the 2013 sentencing.

The trial court then stated its reasons for the sentence imposed:

> I'm going to reimpose the sentence that was originally imposed on July 12th of 2013. That sentence is consistent with the guidelines. In fact, as to some of the charges, it's below the standard guideline sentencing range. I think the 20 to 40 years['] incarceration is appropriate given that there were two victims and the circumstances of this case. The court takes into account as it previously did the arguments by counsel, any witnesses that appeared at the preliminary hearing, incorporates all that into this resentencing. So I'm incorporating everything from the July 12, 2013 sentencing except any reference to the mandatory. These are clearly guideline sentences.

*Id.* at 31.

At the conclusion of resentencing, the trial court denied all of Appellant's remaining PCRA claims. *See id.* at 36. The trial court did not alter its original designation of Appellant as an SVP. However, the trial court stated that it would "stay any decision on the [SVP] status given that it's currently in our

appellate courts." *Id.* at 33-34. The Commonwealth then notified Appellant that his "sex offender registration requirements have changed slightly since you were sentenced back in 2013 . . . you will only have to report to the state police once a year instead of four times a year . . . ."[5] *Id.* at 35. Upon further prompting by the Commonwealth, Appellant stated he understood that he was subject to a lifetime reporting requirement. *Id.*

Appellant filed a timely post-sentence motion challenging his registration requirements, SVP designation, and the discretionary aspects of his sentence, which the trial court denied on February 14, 2020. Appellant timely appealed by filing a separate notice of appeal in the above-captioned cases,[6] and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The trial court filed a responsive opinion.

Appellant raises two issues on appeal:

1. Was the sentence of the trial court of [lifetime] registration/reporting to the state police under Megan's law/SORNA illegal and unconstitutional because it was an *ex post facto* law and it violated [A]ppellant's due process right and [A]ppellant's right to reputation under the [Pennsylvania] Constitution?

2. Is [Appellant] entitled to a new sentence hearing because the trial court's sentence of 20 to 40 years in prison was excessive and an abuse of discretion because the record does not show that [Appellant] was beyond rehabilitation?

_____

[5] The Commonwealth did not explicitly refer to Subchapter I and apparently discussed the annual reporting requirement applicable to non-SVP offenders, not the quarterly verification requirements applicable to an SVP. *See* 42 Pa.C.S. § 9799.60(a)-(b).
[6] *See Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018).

Appellant's Brief at 2.

In his first issue, Appellant contends that "[t]he imposition of registration/reporting requirements with the State Police under 42 Pa.[C.S. §] 9799.55(b) is a punishment and punitive and as applied to [Appellant] is an *ex post facto* law." ***Id.*** at 10. Additionally, Appellant asserts that his SVP designation is unconstitutional because "this finding was not made by a jury beyond a reasonable doubt as is required by ***Alleyne*** . . . ." ***Id.*** at 11. Appellant acknowledges ***Butler II***, but he asserts that it does not control because he committed the underlying sexual offenses in 2006. ***See id.*** Appellant adds that "there are studies that find a majority of sex offenders will not reoffend and that the sexual offender registration laws are ineffective in preventing re-offense." ***Id.*** Finally, Appellant asserts that he is entitled to a "due process hearing to show" that he did not pose a high risk of recidivism to protect his reputational rights under the Pennsylvania constitution. ***Id.*** at 11-12.

As a preliminary matter, we consider whether Appellant's brief conforms with the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. ***See*** Pa.R.A.P. 2114-2119 (addressing the specific requirements of each part of a brief on appeal). Where an appellant fails to raise or develop his or her issues on appeal properly, this Court will not consider the merits of the claims raised on appeal. ***See Commonwealth v. Knox***, 50 A.3d 732, 748 (Pa. Super. 2012) (holding that an appellant's failure to cite legal authority in support of his argument results in waiver); ***see also*** Pa.R.A.P.

- 10 -

2119(a) (requiring that an argument section contain discussion and citation of pertinent authorities); Pa.R.A.P. 2101 (stating that "if the defects are in the brief . . . are substantial, the appeal or . . . may be quashed or dismissed").

Here, Appellant's brief fails to develop a proper challenge to the reporting requirements imposed by SORNA II and his designation as an SVP. **See** Appellant's Brief at 10-12. Other than boilerplate statements collected from a patchwork of law, Appellant generally does not cite pertinent legal authority. **See id.** at 11-12. Instead, Appellant largely refers to cases decided under SORNA I, such as **Muniz** and **Taylor v. Pennsylvania State Police**, 132 A.3d 590 (Pa. Cmwlth. 2016) (*en banc*). Appellant's only discussion of case law addressing SORNA II involves an attempt to distinguish his case from **Butler II** by asserting that his offenses occurred in 2006. **See id.** at 11. Similarly, Appellant fails to address any important distinctions between Subchapter H and I, or the registration requirements applicable to an SVP versus sex offenders generally. Accordingly, because Appellant has failed to develop his issue in any meaningful fashion capable of review, it is waived. **See Knox**, 50 A.3d at 748; **see also** Pa.R.A.P. 2101.

Moreover, even if we addressed Appellant's arguments, no relief is due. Although not discussed by Appellant, we note that **Lacombe** and **Butler II** respectively held that Subchapter I and the heightened registration and notification requirements applicable to an SVP are not punitive. Read together, **Lacombe** and **Butler II** belie Appellant's assertion that **Butler II** is distinguishable because Subchapter I applies to an individual who

committed an offense in 2006.[7]  Therefore, in light of our Supreme Court's holdings in *Lacombe* and *Butler II*, Appellant is not entitled to relief from his designation as an SVP.  *See Lacombe*, 234 A.3d at 626-27; *Butler II*, 226 A.3d at 993.

We recognize that at Appellant's resentencing, there was considerable uncertainty regarding the outcomes in *Lacombe* and *Butler II*, and that the trial court chose to stay its decision on Appellant's SVP claims pending the Supreme Court's decisions.  Therefore, the most prudent course is to remand the matter to the trial court to address and notify Appellant of any additional reporting requirements related to his SVP status under Subchapter I.

In his second issue, Appellant challenges the discretionary aspects of his sentence.  Appellant contends that the sentence imposed by the trial court was manifestly unreasonable and an abuse of discretion because the court "solely based [the sentence] on the victim impact and [Appellant's] alleged course of conduct."  Appellant's Brief, at 13.  He claims that the decision to impose consecutive sentences, resulting in an aggregate sentence of twenty

---

[7] Although Appellant briefly refers to violations of his due process and reputational rights, he does not properly support or develop these claims. *See Knox*, 50 A.3d at 748.  Further, we note that the trial court conducted an SVP hearing to determine whether Appellant suffered a mental abnormality that made him more likely to engage in predatory sexually violent offenses. Therefore, absent evidence to support his contention that a majority of sexual offenders will not reoffend or that the registration requirements are ineffective in preventing re-offense, he is not entitled to relief. *Cf. Commonwealth v. Torsilieri*, 232 A.3d 567, 587-88, 596 (Pa. 2020) (remanding for development of the record where the appellant presented evidence contradicting the presumption that all sex offenders posed a high risk of recidivism).

to forty years' incarceration results in an excessive sentence given that "the trial court found [Appellant] to be a caring person and in light of [Appellant's] good conduct in prison." *Id.* at 14. Appellant argues that "[t]he protection of the public, the needs of the community and the protection of the complainants do not require such a draconian sentence." *Id.* at 14-15. Finally, Appellant asserts that the trial court did not consider his age, family history, or rehabilitative needs. *See id.* at 15.

The Commonwealth argues that the trial court's sentence of twenty to forty years of imprisonment for Appellant's repeated sexual abuse of two minor girls was a proper exercise of its discretion. *See* Commonwealth's Brief at 11. The Commonwealth notes that the trial court had the benefit of a PSI; therefore, it is presumed the court was aware of all appropriate sentencing factors. *See id.* The Commonwealth also states that the trial court incorporated the evidence from the initial sentencing, which included expert testimony that Appellant's actions demonstrated a long-term sexual interest in children. *See id.* at 12. Finally, the Commonwealth notes that the trial court's imposition of consecutive sentences was within the court's discretion. *See id.* at 13 (citing *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995) (an appellant is not entitled to a "volume discount" by having sentences run concurrently)).

In reviewing a challenge to the discretionary aspects of a sentence, we are guided by the following principles:

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations and quotation marks omitted).

Instantly, the record reflects that Appellant preserved his sentencing challenge in a post sentence motion. He also filed a timely appeal and raised the issue in his Rule 2119(f) statement. **See** Appellant's Brief at 3-4. Further, his claim presents a substantial question for our review. **See** **Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (noting that "[t]his Court has also held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider

mitigating factors—raises a substantial question" (citations and quotation marks omitted)).  Therefore, we will consider the merits of his issue.

Our review of a challenge to the discretionary aspects of a sentence considers whether the trial court has abused its discretion.  We observe:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion.  In this context, an abuse of discretion is not shown merely by an error in judgment.  Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* (citations omitted and some formatting altered).

> Pursuant to Section 9721(b):
>
> the court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with . . . the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S. § 9721(b).

"[T]he trial court is required to consider the particular circumstances of the offense and the character of the defendant," including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation."  *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citations omitted).  Although "[a] sentencing court need not undertake a lengthy discourse for its reasons for imposing a sentence, . . . the record as a whole must reflect the sentencing court's consideration of the facts

- 15 -

of the crime and character of the offender." ***See Commonwealth v. Crump***, 995 A.2d 1280, 1283 (Pa. Super. 2010).

Further, this Court has held that "where the sentencing judge had the benefit of a [PSI report], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Ventura***, 975 A.2d at 1135 (citation omitted). This Court may only disturb a standard range sentence if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

Here, at sentencing, the trial court considered the PSI, sentencing guidelines, offense gravity score, Appellant's prior record, testimony from the victims, mitigating testimony from Appellant's friends, and the arguments of counsel. ***See*** N.T. Sentencing Hr'g, 7/12/13, at 55-70. At resentencing, the court incorporated the evidence and testimony from the July 12, 2013 sentencing hearing. ***See*** N.T. Resentencing Hr'g, at 31. The court considered Appellant's inmate progress reports and the programs in which Appellant is involved at the prison, as well as updated PSI and psychiatric reports. ***See id.*** at 14, 35-36.

In its Rule 1925(a) opinion, the trial court explained:

The aggregate sentence of 20 to 40 years of incarceration for the multiple instances of sexual assault against two children victims is, as the [c]ourt noted at sentencing, within the recommended guidelines. Further, [] Appellant's age, family history and rehabilitative needs were all disclosed at sentencing, through the testimony of a psychologist, the argument of defense counsel and testimony of a friend. Evidence of Appellant's conduct in prison in

the nine years he has been incarcerated was presented at his resentencing.

Trial Ct. Op. at 5-6 (record citations omitted).

Based on our review of the record, we discern no abuse of discretion by the trial court. **See Caldwell**, 117 A.3d at 770. The trial court had the benefit of a PSI and considered the appropriate sentencing factors and mitigating evidence as stated at both the sentencing hearing and resentencing hearing. **Ventura**, 975 A.2d at 1135. The trial court ultimately concluded that an aggregate sentence of twenty to forty years' incarceration was necessary in light of the impact of Appellant's crimes and in order to protect the public. Appellant has failed to demonstrate that this sentence was clearly unreasonable. Accordingly, Appellant is not entitled to relief.

Judgment of sentence affirmed. Case remanded to trial court to advise Appellant of his current reporting and registration requirements and to correct the record.[8] Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/9/21

---

[8] **See** note 1, *supra*.