J-S20006-21 & J-S20007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFREY ALAN STRICKLER | : | |
| | : | |
| Appellant | : | No. 767 MDA 2020 |

Appeal from the PCRA Order Entered April 29, 2020
In the Court of Common Pleas of Juniata County Criminal Division at
No(s): CP-34-CR-0000122-1992

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JEFFREY ALAN STRICKLER | : | |
| | : | |
| Appellant | : | No. 768 MDA 2020 |

Appeal from the PCRA Order Entered April 30, 2020
In the Court of Common Pleas of Juniata County Criminal Division at
No(s): CP-34-CR-0000121-1992

BEFORE:  NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY NICHOLS, J.:                **FILED AUGUST 17, 2021**

Appellant Jeffrey Alan Strickler appeals[1] from the order dismissing his

motion to terminate his registration requirements under the Sexual Offender

_____

[1] Although Appellant filed a separate appeal at each underlying trial court docket number, both matters concern the trial court's denial of Appellant's motion to terminate SORNA registration requirements.  Therefore, we consolidate these cases for purposes of appeal.  ***See*** Pa.R.A.P. 513.

Registration and Notification Act[2] (SORNA), which the trial court treated as an untimely Post Conviction Relief Act[3] (PCRA) petition. Appellant argues that the trial court erred by finding that he was required to register under SORNA II and in concluding that he was required to raise his claims under the PCRA. We affirm.

The underlying facts of this matter are well known to the parties. Briefly, Appellant pled guilty to involuntary deviate sexual intercourse (IDSI), aggravated indecent assault, and corruption of minors at two separate docket numbers for an incident that occurred in 1991. On December 10, 1992, the trial court sentenced Appellant to an agreed-upon aggregate term of six to twenty years' incarceration.

In 1995, the General Assembly passed Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1) (Megan's Law I), which went into effect on December 24, 1995. Megan's Law I required a ten-year registration period for offenders who had been convicted of IDSI.[4] On May 10, 2000, after our Supreme Court ruled that Megan's Law I was unconstitutional, **see Commonwealth v. D.**

---

[2] Act of Feb. 21, 2018, P.L. 27, No. 10 (Act 10); Act of June 12, 2018, P.L. 140, No. 29 (Act 29) (collectively, SORNA II). Acts 10 and 29 amended the former version of SORNA (SORNA I) after our Supreme Court found SORNA I unconstitutional in **Commonwealth v. Muniz**, 164 A.3d 1189, 1218 (Pa. 2017).

[3] 42 Pa.C.S. §§ 9541-9546.

[4] We note that all versions of Megan's Law and SORNA have stated that an offender's registration period begins at the time he is released from incarceration.

*Williams*, 733 A.2d 593 (Pa. 1999), the legislature enacted Megan's Law II. Under Megan's Law II, offenders convicted of IDSI were subject to lifetime registration.

On August 8, 2001, Appellant filed a petition to enforce his plea agreement. In his petition, Appellant argued that "[p]ursuant to the plea agreement entered between [Appellant] and the Commonwealth, [Appellant] was to be released after a minimum incarceration period of six years . . . and serve the remainder [of his sentence] on parole." *See* Mot. to Enforce Plea Agreement, 8/8/01, at 2 (unpaginated).[5] On October 17, 2001, the trial court granted Appellant's motion, vacated the judgment of sentence, and re-sentenced Appellant to six to twelve years' incarceration, to begin "from the date of initial commitment." Trial Ct. Order, 10/30/01, at 1-2.

In 2003, after our Supreme Court found that certain portions of Megan's Law II were unconstitutional, *see Commonwealth v. G. Williams*, 832 A.2d 962 (Pa. 2003), the General Assembly enacted Megan's Law III, which went into effect on January 24, 2005. Like Megan's Law II, Megan's Law III required lifetime registration for offenders who had been convicted of IDSI.

---

[5] We note that in its Rule 1925(a) opinion, the trial court indicated that the transcripts from Appellant's original plea hearing, original sentencing, and re-sentencing hearings were destroyed in a flood. *See* Trial Ct. Op., 9/17/20, at 6 n.2. However, because these facts are not in dispute, we summarize the background of Appellant's case based on the existing record and the information provided by the trial court.

On December 20, 2012, Megan's Law III was replaced by SORNA I.[6,7] On July 19, 2017, our Supreme Court issued a decision in **Muniz**, which concluded that SORNA I's registration requirements were "punitive in effect." **Muniz**, 164 A.3d at 1218. Therefore, the Court concluded that SORNA I violated *ex post facto* principles when applied to individuals who committed a sexual offense before December 20, 2012, the effective date of SORNA I. **See id.** at 1223; **see also Commonwealth v. Lippincott**, 208 A.3d 143, 150 (Pa. Super. 2019) (*en banc*).

In response to **Muniz**, the legislature enacted SORNA II, which divides sex offender registrants into two distinct subchapters—Subchapter H and Subchapter I. Subchapter H includes individuals who were convicted for an offense that occurred on or after December 20, 2012, and whose registration requirements had not yet expired. **See** 42 Pa.C.S. § 9799.11(c). Subchapter I includes individuals who were convicted for an offense that occurred "on or after April 22, 1996, but before December 20, 2012," **or** who were required to register under a former sexual offender registration law on or after April 22, 1996, but before December 20, 2012, and whose registration requirements had not yet expired. **See** 42 Pa.C.S. § 9799.52.

---

[6] 42 Pa.C.S. §§ 9799.10-9799.41 (eff. 2012).

[7] We note that, after SORNA I was enacted, our Supreme Court ruled that Megan's Law III was unconstitutional. **See Commonwealth v. Neiman**, 84 A.3d 603 (Pa. 2013).

On March 15, 2019, Appellant filed a motion seeking to "bar the applicability of sex offender registration" under SORNA II. The trial court subsequently denied Appellant's motion, stating that SORNA II "addresses the issues raised by the *Muniz* court in that the registration requirements . . . are no longer punitive" and noting that, until the Pennsylvania Supreme Court issued a decision indicating otherwise, Appellant was not entitled to relief. Trial Ct. Order, 5/21/19, at 1.

Appellant filed the instant petition to terminate his SORNA II registration requirements on January 27, 2020.[8] At the hearing on March 6, 2020, Appellant argued that (1) neither Subchapter I nor Subchapter H applied because Appellant had never been required to register under a "constitutionally valid sexual registration law;" (2) SORNA II violated *ex post facto* principles when applied to Appellant retroactively; and (3) his claims could be raised outside of the PCRA. *See* N.T. Mot. Hr'g, 3/6/20, at 3-6.

The Commonwealth responded that Subchapter I applied to Appellant because he was subject to lifetime registration under Megan's Law II at the

---

[8] Therein, Appellant argued that (1) SORNA II violated *ex post facto* principles; (2) neither Subchapter I nor Subchapter H were applicable to him; (3) SORNA II's registration requirements could not be imposed retroactively on Appellant because he pled guilty at a time when Megan's Law was in effect; and (3) SORNA II violated due process. *See* Pet. to Terminate Sexual Offender Registration Requirements, 1/27/20, at 6-10 (unpaginated).

time of his release from prison.[9]  *Id.* at 8.   Further, the Commonwealth asserted that there was a "*res judicata* issue" because Appellant raised identical claims in his 2019 motion, which the trial court denied.  *Id.* at 7-8. Finally, the Commonwealth claimed that SORNA II implicated the legality of Appellant's sentence and was cognizable under the PCRA.  *Id.* at 11.

On April 29, 2020, the trial court issued an order denying Appellant's motion.  Appellant subsequently filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) statement.  In its Rule 1925(a) opinion, the trial court addressed Appellant's substantive challenges to SORNA II and concluded that he was not entitled to relief.  Trial Ct. Op., 9/17/20, at 1-3 (unpaginated). However, the trial court also indicated that Appellant's motion was untimely under the PCRA.  *See id.* at 1-3.

While this appeal was pending, our Supreme Court issued a decision in *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020)*.*   The *Lacombe* Court held that petitioners may challenge the application of a sexual offender registration statute outside the framework of the PCRA.  *Lacombe*, 234 A.3d at 618.   Importantly, the *Lacombe* Court also held that "Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws."  *Id.* at 605-06.

---

[9] The Commonwealth noted that, although the date of Appellant's release from prison was unclear, it was undisputed that he was in prison until at least October of 2001.  Therefore, any version of Megan's Law in effect after 2000 would have required lifetime registration based on Appellant's conviction for IDSI.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Whether the trial court erred in classifying Appellant's petition to terminate the registration, notification and verification requirement as an untimely [PCRA] petition as the challenges were to the constitutionality of the statute underlying the punitive registration requirements which does not raise an "illegal sentence" claim that is time-barred?

2. Whether the trial court erred in denying Appellant's petition to terminate the registration, notification, and verification requirements, imposed upon him by Subchapter I of [SORNA], because the retroactive application of SORNA to Appellant, whose offenses were committed prior to the statute's enactment, violates the *ex post facto* clauses of the United States Constitution and the Pennsylvania Constitution?

3. Whether the trial court erred in denying Appellant's petition to terminate the registration, notification, and verification requirements, imposed upon him by Subchapter I of SORNA because the imposition of Subchapter I registration and notification requirements upon Appellant violates his right to due process in that Subchapter I subjects Appellant to its requirements based on a flawed irrebuttable presumption that all persons convicted of an enumerated offense "pose ahigh risk of committing additional sexual offenses," thereby impinging upon Appellant's right to reputation without any individualized determination that Appellant, in particular, actually poses a risk of re-offense?

Appellant's Brief at 4-5 (some formatting altered).

**Procedural Issues**

In his first claim, Appellant argues that the trial court erred in treating his motion as an untimely PCRA petition. Appellant's Brief at 40-42 (relying on **Lacombe**).

- 7 -

In response, the Commonwealth asserts that Appellant's petition "should have been denied by the trial court on the basis of collateral estoppel" because the trial court previously addressed Appellant's instant claims when it denied Appellant's prior petition for relief in 2019. Commonwealth's Brief at 2 (some capitalization omitted). The Commonwealth contends that "[a]s a matter of policy, convicted persons should not be afforded unlimited bites at the apple to challenge specific matters already properly litigated and decided upon." *Id.* at 4. Therefore, the Commonwealth argues that Appellant is not entitled to review of his claims. *Id.*

As noted previously, our Supreme Court recently held that petitioners may challenge sex offender registration requirements outside of the PCRA. *See Lacombe*, 234 A.3d at 618. In reaching that conclusion, the Court explained:

> This Court has not yet required that sexual offender registration statutes be challenged through the PCRA or some other procedural mechanism. Indeed, we have consistently decided cases regarding sexual offender registration statutes that were challenged via different types of filings. Our approach in this regard takes into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final.
>
> This is especially so under the PCRA as many registrants . . . would be ineligible for relief on timeliness grounds. Other registrants may be ineligible because their sentence has expired while their registration requirements continue. Both situations arise from the fact that the registration period does not begin until registrants are released from prison, which may be well after their sentence has become final or may signal the completion of their sentence.

Accordingly, we decline to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes . . . .

*Id.* at 617-18 (citations omitted).

Here, in light of *Lacombe*, we agree with Appellant that the trial court had jurisdiction to consider his SORNA claims outside of the PCRA. *See id.* Further, as the *Lacombe* Court noted, there have been "frequent changes" to the laws concerning sex offender registration requirements. *Id.* at 617. Therefore, given the evolving nature of those laws, we reject the Commonwealth's assertion that Appellant should be precluded from challenging his SORNA requirements based on collateral estoppel. *See id.* at 617-18.

### SORNA II Claims

In his next issue, Appellant argues that the trial court erred in concluding that he was required to register under SORNA II because neither Subchapter H nor Subchapter I are applicable to him.[10] Appellant's Brief at 4. With respect to Subchapter I, Appellant argues that he "does not fall within the first classification, 42 Pa.C.S. § 9799.52(1), because he committed his offenses prior to his arrest in these matters, which occurred on June 15, 1992, which is clearly prior to April 22, 1996." *Id.* at 18. Further, he argues that he "does not fall within the second classification, 42 Pa.C.S. § 9799.52(2), because his

---

[10] Subchapter H applies to offenders who were convicted of offenses that occurred on or after December 20, 2012. Here, it is undisputed that Subchapter H is inapplicable to Appellant, who was convicted for an offense that occurred in 1991.

period of registration should have expired on or about October 17, 2011, after he registered in accordance with Megan's Law for a period of ten (10) years." *Id.*

Appellant further claims that, even if Subchapter I applies, it violates *ex post facto* principles when applied to him retroactively. *Id.* at 19. In support, Appellant relies on prior Commonwealth Court decisions, which stated that Subchapter I was punitive and therefore violated *ex post facto* laws when applied to a petitioner who was convicted of an offense before sex offender registration laws were enacted. *Id.* at 20 (citing *T.S. v. Pennsylvania State Police*, 231 A.3d 103 (Pa. Cmwlth. 2020), *rev'd*, 241 A.3d 1091 (Pa. 2020)).

The Commonwealth responds that at the time of Appellant's release from prison, he was subject to lifetime registration under Megan's Law II, which applied to "anyone incarcerated on or after July 9, 2000." Commonwealth's Brief at 4. Therefore, the Commonwealth argues that "[a]s a result of Appellant's status as a prior lifetime registrant during the relevant time period, he remains subject to lifetime registration under Act 10, Subchapter I." *Id.* at 5. Further, the Commonwealth asserts that "[t]he *Lacombe* Court's clear ruling is that Subchapter I is non-punitive and, therefore, *ex post facto* protections do not apply to Appellant's case." *Id.* at 6.

Appellant's claim raises a question of law. Therefore, "our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Brensinger*, 218 A.3d 440, 456 (Pa. Super. 2019) (citation omitted).

- 10 -

As noted previously, all versions of Megan's Law and both SORNA I and II have stated that an offender's registration period begins at the time he is released from incarceration. Here, the record reflects that Appellant's registration requirements began on December 2, 2004.[11] At that time, Megan's Law II was in effect, which required lifetime registration for offenders who, like Appellant, had been convicted of IDSI. **See** 42 Pa.C.S. § 9795.1(b)(2) (expired) (requiring lifetime registration for offenders who had been convicted of IDSI). Therefore, because Appellant was subject to registration under Megan's Law II, and that registration term had not expired, Subchapter I applies. **See** 42 Pa.C.S. § 9799.52(2) (requiring registration for offenders "who were[] required to register . . . under a former sexual offender registration law . . . on or after April 22, 1996, but before December 20, 2012, and whose registration requirements has not yet expired").

To the extent Appellant claims that Subchapter I violates *ex post facto* principles, **Lacombe** is dispositive. **See Lacombe**, 234 A.3d at 605-06 (stating that "Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws"). Further, as demonstrated by our Supreme Court's decision in **T.S.**, **Lacombe** applies equally to individuals who, like Appellant, were convicted of an offense prior to the enactment of any sex offense registration scheme. **See T.S.**, 241 A.3d

---

[11] Attached to his appellate brief, Appellant included a copy of the "Sexual Offender Registration" paperwork on file with the Pennsylvania State Police. Both the PSP paperwork and the Pennsylvania Megan's Law registry state that Appellant's registration period began on December 2, 2004.

1091 (reversing a decision granting relief to an individual who committed sex offenses before sex offender registration laws were enacted, in light of *Lacombe*). Accordingly, Appellant's *ex post facto* challenge to Subchapter I is meritless.

In his remaining claim, Appellant argues that Subchapter I violates his due process rights under both the state and federal constitutions. Appellant's Brief at 42. However, the record reflects that although Appellant raised this issue in his motion, he did not mention the claim nor attempt to provide any evidence, citation to authority, or analysis at the evidentiary hearing. Therefore, it is waived. *See* Pa.R.A.P. 302(a).

In sum, we conclude that Appellant is not entitled to relief on his challenge to SORNA II's registration requirements. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/17/2021

- 12 -